******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID H. FAILE, JR. *v.* TOWN OF STRATFORD
PAUL A. LANGE *v.* TOWN OF STRATFORD
N759ZD, LLC *v.* TOWN OF STRATFORD
(AC 38912)

DiPentima, C. J., and Mullins and Westbrook, Js.

*Syllabus*

The plaintiffs, F, L, and N Co., owners of aircraft hangars at an airport, filed four appeals from the decisions of the Board of Assessment Appeals of the defendant town of Stratford denying their appeals from the town's assessments of the hangars, in which they had claimed that the town's valuations were excessive. The trial court sent notice to the parties of a pretrial settlement conference, which required, inter alia, that the parties have an attorney with ultimate authority to settle the case attend the conference, and the attendance of each plaintiff or entity that would be testifying. F and G, the attorney representing the plaintiffs, as well as the town's attorney, were present at the pretrial conference, but L was absent due to his hospitalization a few days prior. The settlement conference took place in chambers, off the record, but afterward the court went on the record to consider the town's motions for nonsuit, which were based on the plaintiffs' failure to have someone present at the pretrial conference with authority to settle the matters. Although G repeatedly claimed that he had the ultimate authority to settle the matters, the court chastised G for appearing at the settlement conference without having such authority, stated its belief that L, who was an attorney, had the ultimate authority to settle the matters in one of the appeals, and found that certain paper copies of documents were not brought to the conference as required by the court's notice. Upon questioning G with respect to the appeal involving N Co., G stated that, on the basis of a strict reading of the language of the court's orders, he did not have ultimate authority as required by the notice. Accordingly, the court granted the town's motions for judgments of nonsuit. The plaintiffs thereafter filed motions to open the judgments of nonsuit, which the trial court denied, and this joint appeal by the plaintiffs followed. On appeal, the parties disagreed as to the applicable standard of review of the trial court's judgments of nonsuit. The plaintiffs claimed that this court should apply a more nuanced abuse of discretion standard as set forth in *Millbrook Owners Assn., Inc.* v. *Hamilton Standard* (257 Conn. 1), while the town argued that the more deferential general abuse of discretion standard applied. *Held*:

1. Even if this court applied the traditionally more deferential abuse of discretion standard, the trial court abused its discretion in rendering the judgments of nonsuit against F, the trial court's findings that F violated its order by not having someone with ultimate authority to settle the matters present at the pretrial settlement conference, and by failing to bring to the conference every physical piece of paper he would offer into evidence at trial having been clearly erroneous: F and his attorney were present at the conference, and F, as the owner of his hangars, had the right to refuse to settle, and his willingness or unwillingness to settle the matter for some amount that the court may have thought was reasonable did not violate the court's order; furthermore, because G had electronic copies of the documents that would be used at trial on his laptop computer, which he brought to court, G and F complied with the court's order, which did not state that the parties needed every physical piece of paper that would be offered into evidence.

2. Although N Co. failed to establish clear error in the trial court's finding that G did not have ultimate authority to settle N Co.'s tax appeals in light of G's concession that, under a strict reading of the court's order, he did not have that authority, even under the broader traditional abuse of discretion standard, the court improperly rendered judgments of nonsuit against N Co.; L, the principal of N Co. and the person whom the trial court found was vested with the ultimate authority to settle N Co.'s tax appeals, was not in attendance at the pretrial conference because he was hospitalized, the court made no findings of a wilful

disregard of its orders or of contemptuous behavior on the part of either G or L, and a dismissal or a nonsuit as a sanction for the failure of L to attend when he was ill and in the hospital did not serve justice or in any way vindicate the legitimate interests of the town and the court.

Argued March 9—officially released October 17, 2017

*Procedural History*

Appeals from the decisions of the defendant's Board of Assessment Appeals, brought to the Superior Court in the judicial district of Fairfield and transferred to the judicial district of New Britain, where the court, *Hon. George Levine*, judge trial referee, rendered a judgment of nonsuit as to all the appeals; thereafter, the court denied the plaintiffs' motions to open the judgments of nonsuit, and the plaintiffs appealed to this court. *Reversed*; *further proceedings*.

*Paul M. Grocki*, for the appellants (plaintiffs).

*Bryan L. LeClerc*, for the appellee (defendant).

*Opinion*

MULLINS, J. In this joint tax appeal, the plaintiffs, David H. Faile, Jr., Paul A. Lange, and N759ZD, LLC (LLC), appeal from the judgments of nonsuit, rendered by the trial court, in favor of the defendant, the town of Stratford (town). They also appeal from the court's denial of their motions to open the nonsuits. On appeal, the plaintiffs claim that the court's findings that they violated its orders were clearly erroneous, and that, even if we assume, arguendo, that they did violate the orders, the court abused its discretion in rending judgments of nonsuit. We agree with the plaintiffs.[1] Therefore, we reverse the judgments of the trial court.

The following facts, garnered from the record, inform our review. At the time this action was commenced, the plaintiffs owned aircraft hangars, known as T-Hangars (hangars), located at Sikorsky Memorial Airport in Stratford. The hangars were located on land that was leased from the city of Bridgeport. Faile owned two hangars, A-9 and B-11; the LLC owned one hangar, A-3. Lange is the principal of the LLC and a member of the law firm, Law Offices of Paul A. Lange, LLC, which is counsel of record for the plaintiffs in this case.[2]

The town assessed and taxed the hangars on the grand lists for 2008 and 2009. The plaintiffs appealed the assessments and their taxes to the Board of Assessment Appeals of the town (board), alleging, in relevant part, that the valuations were excessive. After each appeal was denied by the board, the plaintiffs filed appeals in our Superior Court.[3] Initially, the appeals were stayed pending the Supreme Court's decision in *Stratford* v. *Jacobelli*, 317 Conn. 863, 865–66, 120 A.3d 500 (2015) (concluding that hangars are taxable real property rather than personal property). Once the stay was lifted, the court, on October 1, 2015, sent notice to the parties of a pretrial settlement conference. The court assigned that conference for November 3, 2015.

The notice provided in relevant part: "This case is assigned for pretrial on [November 3, 2015] at 10 a.m. . . . The following must attend:

"1) The attorney who will try the case, unless otherwise ordered by Judge [George] Levine;

"2) The attorney who has ultimate authority to make a recommendation to the client, if different from the attorney described in #1 above.

"If plaintiff is a person(s), the plaintiff(s) must attend. The assessor must attend. Any appraiser retained must attend but need not complete an appraisal report for pretrial. If plaintiff is a corporation or other type of legal entity, a principal who has ultimate authority to negotiate a settlement must be present. 'Ultimate authority' means the ability to resolve the case by withdrawing it without any change in assessment, if per-

suaded it is in plaintiff's best interests, without checking with anyone else. Someone with authority to negotiate a settlement at a preestablished figure does not have 'ultimate authority.' A person familiar with the finances and management of the subject property must attend.

"If this date is inconvenient, please select other dates with all counsel/pro se parties and e-file a motion for continuance with proposed dates.

"Failure to comply with this order may result in sanctions, including a judgment of nonsuit or default. If no principal can attend, the parties should contact the court."

On November 4, 2015, the court issued another order, which provided in relevant part:

"By agreement of the parties, the . . . matter has been scheduled for another pretrial conference, to be conducted on [December 2, 2015] . . . .

"All terms of the original pretrial order remain in effect with the following modifications:

"1) The following must attend: Each plaintiff and/or entity and every person who will be called to testify at trial.

"2) Counsel for all parties must bring every piece of paper which will be offered in evidence.

"3) Counsel for each party must be prepared to state all the testimony to which each witness is expected to testify, on a count by count basis and on a year by year basis.

"4) Failure of any plaintiffs to appear will result in a judgment of nonsuit.

"Failure to comply with these terms may result in sanctions, including nonsuit or default."

On November 18 and 19, 2015, the plaintiffs filed motions for continuance of that settlement conference on the ground that discovery was outstanding and the plaintiffs had noticed, but not yet taken, the deposition of the town's tax assessor; the court denied the motions on the same days they were filed. On November 25, 2015, the town filed a motion for extension of time, requesting that the court give it a thirty day extension to respond to the plaintiffs' discovery requests. There is no indication in the record that the court acted on the town's motion.

On Wednesday, December 2, 2015, the parties appeared for the settlement conference. Lange, however, was absent due to his hospitalization on Sunday, November 29, 2015, just a few days before. Attorney Paul Grocki, an attorney with the Law Offices of Paul A. Lange, LLC, was present on behalf of the plaintiffs. Faile also was present. Appearing on behalf of the town was Byran LeClerc. The settlement conference was held

in chambers, off the record, but afterward, the court went on the record to consider the town's motions for nonsuit.

During the hearing, the court separately addressed each of the plaintiffs' appeals, with the bulk of the discussion occurring in the first matter, CV-09-4025677-S, which is Faile's appeal from the 2009 decision of the board. LeClerc stated that the town was moving "for nonsuit based upon the plaintiff's failure to have someone present at this morning's pretrial with authority to settle this matter."

Grocki first explained to the court that he had filed a motion for a continuance approximately two weeks earlier due to outstanding discovery, which the court had denied. The court asked Grocki if he had been given the ultimate authority to settle this matter. Grocki responded that he had been given such authority. He further noted that Faile also was present at the settlement conference, and that Faile, certainly, had authority to settle his own cases. Grocki acknowledged that Faile wanted to do whatever Lange recommended, but that, ultimately, the parties were taking the advice of counsel, namely Grocki. Grocki explained to the court that the parties just "couldn't come to an agreement" regarding settlement. He acknowledged that his clients would not settle for a property tax fair market assessment of more than $9000.

The court chastised Grocki for appearing at the settlement conference without having the "ultimate authority" as set forth in the pretrial notices. Grocki argued, however, that he did have the ultimate authority and that Faile, himself, also had been present at the settlement conference. The court asked Grocki why he had not notified the court that Lange would not be present before the parties convened the settlement conference.[4] Grocki explained that Lange was hospitalized on the Sunday before the pretrial conference, and that they did not know how long he would remain in the hospital. When they realized that he would not be released in time for the settlement conference, it was too late to notify the court. The court then told Grocki that "the purpose of the language contained in the pretrial notice [was] to make certain that people with unfettered authority [were there] to negotiate a settlement, and further [that it was] required that the attorney, who ha[d] the closest relationship—or . . . who ha[d] ultimate authority to make a recommendation to the client must be [there]. Now that clearly is Mr. Lange. Is that correct?" Grocki replied that Lange was an attorney but that Lange, in fact, was not the attorney for these matters.

The court continued to confront Grocki, asking whether Lange actually had the ultimate authority to settle all of these matters, rather than Grocki. Grocki continued to tell the court that he, Grocki, was the

attorney for all of the plaintiffs, that Lange was not the attorney for these matters. Grocki further explained that he had the ultimate authority to settle all of these matters, but that the parties would not settle for more than a $9000 fair market assessment.

Despite Grocki's protestations, the court stated that it believed Lange had the ultimate authority to settle Faile's appeal from the 2009 decision of the board, and, because Lange was not present, despite his hospitalization, "it was impossible . . . to make a good faith effort at a resolution of this case." The court then granted the town's motion for nonsuit in CV-09-4025677-S.

The court then considered CV-10-6006946-S, Faile's appeal from the 2010 decision of the board. The court asked LeClerc if he wanted to make a motion. LeClerc responded that he was moving for a nonsuit "based upon [Faile's] failure to have someone present at this morning's pretrial with ultimate authority to settle this matter, and also for not having all documents that will be entered into evidence, specifically the document evidencing one of the three airplane hangars had been sold."

Grocki asked the court if it wanted him to reiterate all of the arguments that he set forth for the previous matter. The court asked if they would be the same, and Grocki replied in the affirmative. The court then asked Grocki if he had brought the papers related to the sale of the hangar, and Grocki stated that he had electronic versions of everything with him, which he readily could access on his computer. The court chastised Grocki for not bringing "every piece of paper [he] intend[ed] to offer into evidence." The court then stated that it was granting the motion for nonsuit in CV-10-6006946-S on the same basis as it had granted the motion in CV-09-4025677-S, and in addition that paper copies of documents were not brought to the conference.

Next, the court heard the town's motion for nonsuit in CV-09-4037511-S, Lange's appeal from 2009 decision of the board. See footnote 2 of this opinion. The court asked the parties if everything that was said previously also applied to this motion, and the parties replied in the affirmative. LeClerc then stated that the town was moving on the ground that the plaintiff had failed "to have someone present with ultimate authority to settle this matter at today's pretrial." The court asked Grocki if he had been authorized to settle "this case for a fair market value assessment of not more than $9000?" Grocki said yes, but there were other terms as well. He also reiterated that he had the ultimate authority to settle this matter, but that there was a bottom line, an amount Lange would not go above for a fair market assessed value.

The court continued to ask Grocki if he believed he had the "ultimate authority" to settle these matters as

set forth in the court's orders. Grocki continued to insist that he did have such authority and that the plaintiffs had complied with the orders of the court because he did not need "to check with anyone else in terms of . . . resolving the matter." Grocki argued that the fact that the parties had established a bottom line did not mean that he was without ultimate authority. The court responded that it found Grocki's insistence "incomprehensible." The court then granted the motion for nonsuit in CV-09-4037511-S.

Finally, the court considered CV-10-6007416-S, the LLC's appeal from the 2010 decision of the board. The town moved for nonsuit in this case on the ground that the LLC failed "to have someone present with ultimate authority to settle this matter at [that day's] pretrial." The court asked Grocki to identify the principal of the LLC, and Grocki responded that it was Lange. It asked if Lange was present, and Grocki responded that he was not present. Grocki also stated that he would mirror his prior arguments that he had the ultimate authority to settle this matter. The court then asked Grocki once again if he believed he was in compliance with the court's orders in the pretrial notice. Grocki began that "based on [his] interpretation of the circumstances," but the court then interrupted Grocki and stated, in part, that Grocki was not "called upon to interpret the circumstances of a pretrial notice." Grocki asked to look at the order again. Shortly thereafter, the court said: "Let's go off the record."

Upon resuming the on-the-record hearing, the court asked Grocki whether he had complied with the terms of the pretrial notice. Grocki then stated that, on the basis of a strict reading of the language in the court's orders, he did not enjoy ultimate authority as required by the notice. Grocki was also offered to amend his remarks regarding his authority in the CV-09-4037511-S case, which he did, to reflect the discussion on the record in the CV-10-6007416-S case. The court then granted the motion for a nonsuit in CV-10-6007416-S.

The plaintiffs, twenty days following the court's judgments, filed motions to open the judgments of nonsuit. Grocki argued in the hearing on those motions that he did have the ultimate authority to settle the matters at the settlement conference. Grocki further argued that, to the extent that the court did not agree that he had such authority because it concluded that Lange had the ultimate authority, any failure to comply was due to Lange's hospitalization, which, he argued, established good cause for any alleged noncompliance. The court denied the motions. This joint appeal followed. Although we will consider the appeals for Faile and the LLC separately, we first discuss our standard of review, which the parties dispute.

The plaintiffs contend that we should apply the more nuanced standard set forth in *Millbrook Owners Assn.*,

*Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001), while the town contends that we should apply the more deferential general abuse of discretion standard. After a thorough analysis of *Millbrook* and its related cases, although we are persuaded that *Millbrook* should apply in instances such as this, we conclude that, under either the more nuanced *Millbrook* standard or under the deferential general abuse of discretion standard, the court abused its discretion in rendering judgments of nonsuit in these matters.

We start by setting forth a brief overview of *Millbrook*. In that case, the plaintiff failed to respond to the defendants' request that it disclose the opinions of two witnesses who were expected to testify at trial. Id., 6. The defendants thereafter moved to compel disclosure, and, in response, the trial court ordered the plaintiff to disclose those opinions. Id. Thereafter, the plaintiff decided that those witnesses would not testify at trial, but that they only would be used to help prepare for litigation. Id., 6–7; see also Practice Book (2001) §§ 13-4 (2) and 13-4 (4). After other procedural events, the defendants filed a motion to dismiss on the ground that the plaintiff had failed to disclose the witnesses pursuant to Practice Book (2001) § 13-4 (4), which concerns experts who will be called to testify at trial. Id., 8. The plaintiff objected on the ground that the witnesses would not be called at trial. Id. The court heard the motion to dismiss, and entered a conditional dismissal. Id., 9. The plaintiff attempted to comply with the conditions, but, apparently, did not do so successfully, and the defendants renewed their motion to dismiss, pursuant to Practice Book § 13-14, which the court, ultimately, granted. Id., 9, 13–14.

On appeal, our Supreme Court opined that the trial court could have dismissed the plaintiff's case for failure to comply on two different bases. First, the trial court could have dismissed the case as a sanction pursuant to Practice Book § 13-14, which provides sanctions for, inter alia, failing to comply with discovery orders. Id., 14. Second, our Supreme Court opined that the trial court "could have seen that same failure [to comply with the court's order] as justifying the sanction of dismissal under the court's inherent sanctioning power." Id.

Ultimately, however, our Supreme Court ruled that it made no difference to its analysis under which grant of authority the trial court had acted, because the propriety of the trial court's exercise of its authority under either or both grants of authority was considered under the same standard on appeal: "[A] court may, either under its inherent power to impose sanctions in order to compel observance of its rules and orders, or under the provisions of § 13-14, impose sanctions, including the sanction of dismissal. In this connection, we agree with the defendants that, in the present case, the court

was acting under either—or both—grants of authority. It is not necessary, however, to determine which grant of authority it acted under, because the standards for gauging the propriety of its action are the same under either." Id., 14–15.

The court then stated in relevant part: "Traditionally, we have reviewed the action of the trial court in imposing sanctions for failure to comply with its orders regarding discovery under a broad abuse of discretion standard. . . . The factors to be considered by the court include: (1) whether noncompliance was caused by inability, rather than wilfulness, bad faith or other fault; (2) whether and to what extent noncompliance caused prejudice to the other party, including the importance of the information sought to that party's case; and (3) which sanction would, under the circumstances of the case, be an appropriate judicial response to the noncomplying party's conduct. . . . As with any discretionary action of the trial court, appellate review requires every reasonable presumption in favor of the action, and the ultimate issue for us is whether the trial court could have reasonably concluded as it did. . . . In reviewing a claim that the court has abused this discretion, great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . The determinative question for an appellate court is not whether it would have imposed a similar sanction but whether the trial court could reasonably conclude as it did given the facts presented. Never will the case on appeal look as it does to a [trial court] . . . faced with the need to impose reasonable bounds and order on discovery. . . .

"At the same time, however, we also have stated: [D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. . . . The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Rules are a means to justice, and not an end in themselves. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. . . . Therefore, although dismissal of an action is not an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority . . . the court should be reluctant to employ the sanction

of dismissal except as a last resort. . . . [T]he sanction of dismissal should be imposed only as a last resort, and where it would be the only reasonable remedy available to vindicate the legitimate interests of the other party and the court. . . . It is inherent in these principles that the articulation by the court of the conditions with which the party must comply be made with reasonable clarity.

"Upon reflection, we conclude that the broad abuse of discretion standard that we have been employing for the imposition of sanctions for violation of discovery orders, and for our appellate review thereof, is inaccurate, because it masks several different questions that in fact are involved in the question of when a court is justified in imposing such sanctions. We therefore now take the opportunity to clarify that standard by articulating those specific questions. In order for a trial court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met." (Citations omitted; internal quotation marks omitted.) Id., 15–17.

Our Supreme Court then proceeded to set forth the three factors that must be employed when determining whether the trial court properly exercised its discretion in ordering sanctions for the violation of a discovery order under its inherent authority and/or pursuant to Practice Book § 13-14. "First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo.

"Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review.

"Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." Id., 17–18.

In the present case, the plaintiffs argue that the *Millbrook* standard should be applied to our review of the sanctions of nonsuit in this case. The town argues that *Millbrook* applies only to review of discovery sanctions and the failure to file a certificate of closed pleadings, and that the traditional abuse of discretion standard applies in this case. We conclude that, although *Millbrook* sets forth a standard that appears different in form and is more nuanced than the traditional abuse of discretion standard; see *Yeager* v. *Alvarez*, 302 Conn. 772, 784, 31 A.3d 794 (2011) (*Millbrook* provides "more nuanced analysis" than traditional abuse of discretion

standard, which "masks several different questions that in fact are involved in the question of when a court is justified in imposing . . . sanctions" [internal quotation marks omitted]); both standards are quite similar. See also *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, 165 Conn. App. 737, 755–56, 140 A.3d 321 (applying *Millbrook* test to determine whether trial court abused discretion in rendering judgment of nonsuit for noncompliance with court order not involving discovery), cert. granted, 322 Conn. 908, 140 A.3d 978 (2016); see generally, *D'Ascanio* v. *Toyota Industries Corp.*, 309 Conn. 663, 683–84, 72 A.3d 1019 (2013) (after trial court effectively rendered judgment of dismissal as sanction for expert witness' action, Supreme Court reversed judgment and, although not specifically employing *Millbrook* test, concluded that trial court had "abundance of options at its disposal" other than dismissal—thereby assessing proportionality of court's sanction to actual violation).

Even if we were to conclude, however, that the proportionality prong of the *Millbrook* factors substantively is different from the deference afforded to the trial court's decision by application of the traditional abuse of discretion standard; see generally *Anderson* v. *Commissioner of Correction*, 158 Conn. App. 585, 595 n.9, 119 A.3d 1237 (holding that court abused its discretion, but declining to apply "narrow" *Millbrook* standard to habeas court's imposition of sanction of dismissal with prejudice), cert. denied, 319 Conn. 927, 125 A.3d 202 (2015); we, nevertheless, would conclude that the first two factors of the *Millbrook* test are necessary to any case in which a reviewing court is called upon to assess whether the trial court abused its discretion in rendering a judgment of nonsuit for violations of the court's order.

As to the necessary, although generally unstated, first factor, our long-standing precedent is well defined: "An order of the court must be sufficiently clear and specific to allow a party to determine with reasonable certainty what it is required to do. See *Dept. of Health Services* v. *Commission on Human Rights & Opportunities*, 198 Conn. 479, 488–89, 503 A.2d 1151 (1986); *Adams* v. *Vaill*, 158 Conn. 478, 485–86, 262 A.2d 169 (1969); *Castonguay* v. *Plourde*, 46 Conn. App. 251, 268, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997); *Contegni* v. *Payne*, 18 Conn. App. 47, 59, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989); *Dingwell* v. *Litchfield*, 4 Conn. App. 621, 625, 496 A.2d 213 (1985)." *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 38 (*Vertefeuille, J.*, concurring in part and dissenting in part).

"The construction of an order is a question of law over which we exercise plenary review." *Gianetti* v. *Gerardi*, 122 Conn. App. 126, 130, 998 A.2d 807 (2010). "As a general rule, [orders and] judgments are to be

construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The [order or] judgment should admit of a consistent construction as a whole." (Internal quotation marks omitted.) *State* v. *Denya*, 294 Conn. 516, 529, 986 A.2d 260 (2010).

As to the necessary, although generally unstated, second factor, our law is equally well-defined: Pursuant to Practice Book § 17-19, the trial court may enter a nonsuit or default "[i]f a party *fails to comply with an order* of a judicial authority or a citation to appear or fails without proper excuse to appear in person or by counsel for trial . . . ." (Emphasis added.) Under the plain and unambiguous language of the rule, before a nonsuit or default can be entered for a party's failure to comply with an order of the court, there necessarily must be a finding of *a failure to comply* made by the trial court. See *Housing Authority* v. *Weitz*, 163 Conn. App. 778, 782–83, 134 A.3d 749 (2016) (reversing court's default against defendant who did not appear personally for trial, but whose attorney did appear, because civil parties are "[permitted] to appear through counsel"; therefore, court's finding that defendant failed to appear and entry of default was erroneous).

If an appellate court is called upon to review the findings of the trial court "we apply our clearly erroneous standard, which is the well settled standard for reviewing a trial court's factual findings. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Richards* v. *Richards*, 78 Conn. App. 734, 742, 829 A.2d 60, cert. denied, 266 Conn. 922, 835 A.2d 473 (2003).

As to the third prong of the *Millbrook* test, namely, whether the sanction imposed is proportional to the violation; *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 18; the parties disagree on whether a proportionality analysis should be employed when reviewing the propriety of a trial court's nonsuit due to a nondiscovery related violation. The plaintiffs argue that *Millbrook* should be applied and that the nonsuits in this case were not proportional to the violation. The town argues that the proportionality prong should not be employed and that we must apply the traditional broad abuse of discretion standard.

In this particular case, we conclude that even if we apply the traditionally more deferential abuse of discretion standard, the trial court abused its discretion in

rendering judgments of nonsuit in these matters. "In reviewing a claim that [the] discretion [of the trial court] has been abused, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [T]he ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Allstate Ins. Co.* v. *Mottolese*, 261 Conn. 521, 529, 803 A.2d 311 (2002); see also *Herrick* v. *Monkey Farm Cafe, LLC*, 163 Conn. App. 45, 50, 134 A.3d 643 (2016). We now consider the merits of the plaintiffs' claims.

I

On appeal, Faile claims that the court improperly rendered judgments of nonsuit against him. Specifically, Faile argues that, although he heeded the advice of counsel, namely, Grocki, he was present himself at the settlement conference. Indeed, there was no dispute that Faile owned his hangars. Therefore, he contends, it is indisputable that there was a person with "ultimate authority" present. He further argues that he has a "right to determine whether and upon what terms to settle his cases." Accordingly, he argues, it is indisputable that he did not violate the court's order by failing to have someone with ultimate authority present at the settlement conference.[5]

As to the court's ruling in CV-10-6006946-S that Grocki violated the court's order by failing to have every *physical piece of paper* that he would offer into evidence if the matter were tried, Faile argues that "[t]here is no substantive difference between bringing an electronic copy of each piece of paper versus bringing the printed-out piece of paper. Thus, [Grocki] complied with the order." Therefore, Faile argues, the court's findings that he and/or Grocki were in violation of the court's orders were clearly erroneous. Accordingly, he argues, the court erred in rendering judgments of nonsuit. Furthermore, Faile argues, even if "this somehow constitutes a violation of the order, it [did] not warrant the harsh, last resort sanction of a judgment of nonsuit" in CV-10-6006946-S.

Although the town does not dispute that Faile was present at the pretrial conference, it argues that Faile essentially had delegated his authority to Lange, who was not present. Furthermore, the town argues Grocki did not have ultimate authority to settle these matters because he was not authorized to settle unless the fair market assessment value was $9000 or less. Accordingly, it contends that the court properly rendered a judgment of nonsuit.[6] We agree with Faile that the court's finding of two violations of its orders was clearly erroneous, and that the court, therefore, abused its discretion in rendering judgments of nonsuit against him.

The primary basis for the court's entry of nonsuits

against Faile was the court's finding that Faile was in violation of its order by failing to have a person with "ultimate authority" present at the pretrial conference. The fact of the matter is that not only was Faile's counsel present at that pretrial conference, Faile, himself, was present at that conference. We agree with Faile's assertion that simply because a party has a bottom line and stands firm in his or her position does not mean that the party does not have ultimate authority to settle the case. No party can be mandated to settle a case. See *Allstate Ins. Co.* v. *Mottolese*, supra, 261 Conn. 531. Indeed, an aggrieved taxpayer who appeals from a decision of a board of assessment appeals ultimately has a right to a trial de novo. See *Chestnut Point Realty, LLC* v. *East Windsor*, 324 Conn. 528, 533, 153 A.3d 636 (2017) (taxpayer's right to appeal municipal property tax assessment, like other administrative appeals, derives from statute); *Breezy Knoll Assn., Inc.* v. *Morris*, 286 Conn. 766, 776, 946 A.2d 215 (2008) ("[i]f a taxpayer is found to be aggrieved by the decision of the board of [assessment appeals], the court tries the matter de novo and the ultimate question is the ascertainment of the true and actual value of the applicant's property" [internal quotation marks omitted]).

"Public policy favors and encourages the voluntary settlement of civil suits. . . . We view with disfavor, however, all pressure tactics, whether employed directly or indirectly, to coerce settlement by litigants, their counsel and their insurers. The failure to concur with what a trial court may consider an appropriate settlement should not result in the imposition of any retributive sanctions upon a litigant, his or her counsel or his or her insurer. As our sister state, New York, has recognized, [t]he function of courts is to provide litigants with an opportunity to air their differences at an impartial trial according to law. . . . [The court should not be able] to exert undue pressure on litigants to oblige them to settle their controversies without their day in court." (Citation omitted; internal quotation marks omitted.) *Allstate Ins. Co.* v. *Mottolese*, supra, 261 Conn. 531.

In *Mottolese*, a case wherein the insurer actually refused to participate meaningfully in the settlement conference, our Supreme Court further explained: "Although we sympathize with the trial court's concern that merely attending a pretrial conference while refusing, at the same time, to participate meaningfully in the negotiation or settlement process is not within the spirit of the settlement process, the plaintiff's refusal, on the basis of a validly exercised right to a trial de novo . . . does not fall within the parameters of sanctionable behavior under [Practice Book] § 14-13. *To conclude otherwise would undermine the insured's . . . right to a trial . . . .*" (Emphasis added.) Id., 532.

After reviewing the record in this case, we conclude

that the court's finding that Faile violated its order by not having someone with ultimate authority to settle the matter present at the pretrial conference was clearly erroneous. Faile, himself, was present for the conference, and, as the owner of his hangars, his willingness or unwillingness to settle the matter for some amount that the court may have thought reasonable did not violate the court's order. To be sure, it was *his right* to settle or not to settle the matters. Furthermore, his attorney also was present. Faile had every right to refuse to settle. See id., 531–32. His decision to exercise that right is not a violation of the court's order.

As to the court's additional basis for finding a violation of its order, namely, that Grocki failed to bring to the pretrial conference "every physical piece of paper" he would offer into evidence in the event of a trial, we also conclude that the court's finding was clearly erroneous. The order of the court was that "counsel for all parties must bring every piece of paper which will be offered in evidence." Grocki told the court that he had all available evidence on his laptop computer, which was with him at court.[7] The court's order did not state that the parties needed every *physical* piece of paper. There was no mention in its order that the court expected actual physical pieces of paper. We conclude that by having electronic copies of the documents available, Grocki and Faile complied with the court's order, and the court's finding that this was a violation of its order was clearly erroneous.

Because Faile had ultimate authority to settle his tax appeal, or not settle his tax appeal, as the case may be, and his attorney had with him at the pretrial conference the documentary evidence available in electronic form, we conclude that the court's findings that its orders were violated was clearly erroneous. Accordingly, the court abused its discretion when it rendered judgments of nonsuit against Faile.

## II

The LLC claims that the court abused its discretion in rendering judgments of nonsuit against it. The LLC argues that its attorney, Grocki, did have ultimate authority. Therefore, it argues, the court's finding to the contrary was clearly erroneous.[8] In the event that we agree with the trial court that Grocki did not have ultimate authority, the LLC argues that, under either the proportionality prong of *Millbrook* or under the broad general abuse of discretion standard, the court, nevertheless, abused its discretion in rendering judgments of nonsuit. In the alternative, the LLC also argues that Lange was prevented by illness and hospitalization from attending the conference, which establishes the good cause required to open the judgments of nonsuit, and, therefore, the court improperly denied its motion to open.[9]

The town argues that Grocki did not have ultimate authority to settle these matters because he was not authorized to settle unless the fair market assessment value was $9000 or less. Accordingly, it contends that the court properly rendered judgments of nonsuit. The town also argues that, although we should not apply the proportionality prong of *Millbrook*, under either that prong or under the broad traditional abuse of discretion standard, the court properly rendered judgments of nonsuit.

We conclude that the LLC has failed to establish clear error in the court's finding that Grocki did not have ultimate authority to settle the LLC's tax appeals. We further conclude, however, that even if we apply the broader traditional abuse of discretion standard, the court improperly rendered judgments of nonsuit against the LLC in these matters.

The events as set forth in the transcripts of the hearing, and presented in part I of this option, inform our review. During the hearings, Grocki reiterated consistently that he had the ultimate authority to settle these matters, but that the parties and he, as counsel, agreed that they would not settle for an assessment of more than $9000. When the court considered the motion for nonsuit in CV-10-6007416-S, it went off the record. Upon resuming the hearing, Grocki "conceded" that, under a strict reading of the court's order, he did not have ultimate authority to settle the matter.

Specifically, the following colloquy occurred during the hearing in CV-10-6007416-S: "[Attorney LeClerc]: The town would move for a nonsuit based upon the [LLC's] failure to have someone present with ultimate authority to settle this matter at today's pretrial.

"The Court: All right. Mr. Grocki, is there a principal— or who is the principal in—

"[Attorney Grocki]: In the LLC, Your Honor? . . . That's Paul Lange.

"The Court: Okay. Is he here?

"[Attorney Grocki]: He is not, Your Honor.

"The Court: Okay. And you have some authority from him?

"[Attorney Grocki]: Correct.

"The Court: And that authority is limited to what?

"[Attorney Grocki]: Nine thousand dollars.

"The Court: And you can't negotiate a settlement at a figure above that. Is that correct?

"[Attorney Grocki]: Correct, Your Honor. Unless— yes. Correct. . . .

"The Court: Do you . . . contend that you have complied with the pretrial notice?

"[Attorney Grocki]: Your Honor, for the reasons we just discuss[ed] . . . I mirror . . . what was—

"The Court: I'm sorry. I want to be very clear on what you're saying.

"[Attorney Grocki]: Yeah. Well, Your Honor, I guess, and I think, based on my interpretation of the circumstances, again, I—

"The Court: Excuse me.

"[Attorney Grocki]: —I think—

"The Court: I don't know what you're talking about. You're interpretation of the circumstances. You're not called upon to interpret the circumstances of a pretrial notice. You are merely being asked a very direct yes or no question. . . . Have you complied with the terms of the pretrial notice?

"[Attorney Grocki]: And, Your Honor, I'm sorry. Do you mind if I take the paper from you one more time?

"The Court: Not at all.

"[Attorney Grocki]: Is it okay, just to be certain?

"The Court: Let's go off the record.

"[Attorney Grocki]: Okay.

(Off record.)

"The Court: Let me have those papers.

"[Attorney Grocki]: Sure.

"The Court: Mr. Grocki, you've now had an opportunity to read and reread the terms of the pretrial notice. Now, in light of the fact that the pretrial notice states someone with authority to negotiate a settlement at a preestablished figure does not have ultimate authority, and in spite of the fact that someone with ultimate authority is required to be here on behalf of a corporation or other type of legal entity, are you representing to me that on the face of this pretrial notice, you have complied with its terms?

"[Attorney Grocki]: Your Honor, after—I, I took another look at it, after taking it from Your Honor, and it looks like, based on the strict language of the, of the pretrial order, that it has not been complied with.

"The Court: Okay. Now, in light of that, do you want to go back to the argument on Mr. LeClerc's motion in the previous case, that is . . . *Paul Lange* v. *Town of Stratford* . . . [CV-09-4037511-S]. . . . In light of what [you have] just said, do you want to amend your remarks on the argument—your remarks in the argument on the motion for nonsuit made by Mr. LeClerc in the case I have just cited?

"[Attorney Grocki]: Yes, Your Honor. I'd like it to reflect what we just discussed in . . . the final docket

number with the LLC.

"The Court: That is that you did not—you do not enjoy ultimate authority as required by the pretrial notice?

"[Attorney Grocki]: Yes, Your Honor, based on the strict language—

"The Court: And, therefore, you have failed to comply with the pretrial notice?

"[Attorney Grocki]: Correct, Your Honor.

"The Court: All right. Well, on that ground, the motion for nonsuit is granted."

Although we are somewhat troubled by the colloquy throughout the hearings, leading to this "concession," it, nonetheless, was determined by the trial court to be a concession that Grocki did not have ultimate authority to settle, and thus failed to comply with the pretrial notice. Accordingly, the LLC has not met its burden of establishing clear error in this finding. This, however, does not end our inquiry.

"In reviewing a claim that the court has abused [its] discretion, great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness . . . ." (Internal quotation marks omitted.) *Herrick* v. *Monkey Farm Cafe, LLC*, supra, 163 Conn. App. 50. "[D]iscretion imports something more than leeway in decision-making. . . . It means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986). . . . *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 239, 654 A.2d 342 (1995). In addition, the court's discretion should be exercised mindful of the policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. *Snow* v. *Calise*, 174 Conn. 567, 574, 392 A.2d 440 (1978). The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Rules are a means to justice, and not an end in themselves. . . . *In re Dodson*, 214 Conn. 344, 363, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990). Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure. *Johnson* v. *Zoning Board of Appeals*, 166 Conn. 102, 111, 347 A.2d 53 (1974). . . . *Coppola* v. *Coppola*, 243 Conn. 657, 665–66, 707 A.2d 281 (1998). Therefore, although dismissal of an action is not an abuse of discretion where a party shows a deliberate, contumacious or unwarranted disregard for the court's authority; *Fox* v. *First Bank*, 198 Conn. 34, 39, 501 A.2d 747 (1985); see

also *Pavlinko* v. *Yale-New Haven Hospital*, [192 Conn. 138, 145, 470 A.2d 246 (1984)] (dismissal proper where party's disobedience intentional, sufficient need for information sought is shown, and disobedient party not inclined to change position); the court should be reluctant to employ the sanction of dismissal except as a last resort. *Fox* v. *First Bank*, supra, 39. [T]he sanction of dismissal should be imposed only as a last resort, and where it would be the only reasonable remedy available to vindicate the legitimate interests of the other party and the court. *Pietraroia* v. *Northeast Utilities*, 254 Conn. 60, 75, 756 A.2d 845 (2000)." (Internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 16–17; see also *Herrick* v. *Monkey Farm Cafe, LLC*, supra, 50–51.

Here, Lange, the principal of the LLC and the person whom the trial court found was vested with the ultimate authority to settle the LLC's tax appeals, was not in attendance at the pretrial conference because he was hospitalized. Grocki had been given, if not ultimate authority, at least limited authority to settle the LLC's tax appeals. The court made no findings of a wilful disregard of its orders or of contemptuous behavior on the part of either Grocki or Lange. Although the court appeared frustrated that Lange was not present, no one disputed that he was hospitalized and unable to attend the conference. A dismissal or a nonsuit as a sanction for the failure of Lange to attend when he was ill and in the hospital does not serve justice or in any way "vindicate the legitimate interests of the other party and the court." (Internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, supra, 257 Conn. 17. Under the facts of this case, we conclude that the court abused its broad discretion in rendering judgments of nonsuit against the LLC.

The judgments are reversed and the matters are remanded for further proceedings.

In this opinion the other judges concurred.

[1] Because we agree that the judgments of nonsuit were inappropriate in each of these matters, we need not consider whether the trial court properly denied the motions to open the judgments of nonsuit.

[2] Although hangar A-3 was owned by the LLC for purposes of both the 2009 and 2010 taxes, the town billed Lange in his individual capacity for the taxes owed for 2009. The importance of this matter, however, is not an issue in this appeal. For convenience, we refer to the tax appeals involving hangar A-3 as the LLC's appeal except where relevant.

[3] In CV-09-4025677-S, Faile appealed from the 2009 decision of the board; in CV-10-6006946-S, Faile appealed from the 2010 decision of the board. In CV-09-4037511-S, Lange appealed from the 2009 decision of the board. See footnote 2 of this opinion. In CV-10-6007416-S, the LLC appealed from the 2010 decision of the board. All of these cases were consolidated for one pretrial at the trial court.

[4] We note that Lange was not a party to either of Faile's appeals.

[5] Faile does not challenge the clarity of the court's relevant orders.

[6] The town does not address the court's ruling that Grocki also violated its order by not bringing in every physical piece of paper that he would offer into evidence.

[7] We note that the plaintiffs had filed a motion for continuance of the pretrial conference on the basis that discovery still had not been completed, which motion the court had denied.

[8] On appeal, the LLC does not contest the clarity of the court's orders.

[9] See footnote 1 of this opinion.

_____