******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TERRI L. RICHMAN *v.* SCOTT A. WALLMAN
(AC 38584)

Alvord, Keller and Gruendel, Js.

*Argued March 20—officially released April 21, 2017\**

(Appeal from Superior Court, judicial district of
Danbury, Winslow, J.)

*Terri L. Richman*, self-represented, the appellant
(plaintiff).

*Scott A. Wallman*, self-represented, the appellee
(defendant).

*Opinion*

PER CURIAM. The self-represented plaintiff, Terri L. Richman, appeals from the judgment of the trial court ordering her to sign the revised qualified domestic relations orders (QDROs)[1] that were prepared to divide the retirement assets of her former husband, the defendant, Scott A. Wallman, between the two parties.[2] On appeal, the plaintiff claims that the court (1) improperly held her in contempt, and (2) improperly modified the distribution of the parties' property without the requisite subject matter jurisdiction to do so. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the plaintiff's appeal. The parties' marriage was dissolved on August 20, 2014. On that date, the court approved a separation agreement between the parties and incorporated the terms of the separation agreement into the dissolution judgment. Pursuant to that agreement, the parties agreed that QDROs would be executed to assign to the plaintiff a portion of the defendant's benefits under his 401 (k) defined contribution plan and defined benefit pension plan. The agreement stated that "the [c]ourt in the pending action shall enter a [QDRO] transferring to the [plaintiff] the appropriate amount of the [defendant's] accrued interest in his 401 (k) and pension as indicated herein." The agreement further provided that "the [c]ourt shall have the power to enter alternative orders to effectuate the intention herein." The agreement stipulated that "Attorney Elizabeth McMahon shall prepare the QDROs."

In accordance with the parties' separation agreement, a financial planner, Bill Donaldson, was hired to calculate the 401 (k) equalization plan, which was being used per the parties' agreement to offset the distribution of other assets and to fund college savings plans. In his initial evaluation, Donaldson deviated from the terms of the agreement and erroneously took into account as an offset the present value of the defendant's pension. When this was brought to his attention by the defendant, Donaldson subsequently prepared an amended evaluation and submitted it to the parties for their approval. The plaintiff refused to sign the amended evaluation, and the defendant filed a motion for contempt against the plaintiff on September 16, 2015, asking that the court order the plaintiff to agree to the evaluation so that the QDROs could be prepared accordingly.

Following a hearing held on October 26, 2015, the court ordered the plaintiff to agree to the amended evaluation prepared by Donaldson and to pay her portion of the fees owed to McMahon and Donaldson so that the QDROs could be prepared. The court did not rule on the defendant's motion for contempt. The plaintiff subsequently initiated the present appeal. Additional facts will be set forth as necessary.

With respect to the plaintiff's first claim on appeal, namely, that the court erred in holding her in contempt, she argues that that ruling was based on the erroneous finding that she wilfully refused to agree to Donaldson's amended valuation. The plaintiff argues that the court forced her to agree to an incorrect valuation and equalization of the defendant's retirement assets to be used in the drafting of the QDROs. A review of the record, however, reveals that the amended equalization plan calculated by Donaldson was in accordance with the agreement made by the parties, which categorized credits and deductions being applied to each party's respective share of the defendant's 401 (k). The defendant's IBM retirement pension is not included in this contemplated equalization. Moreover, the plaintiff's claim that the court erroneously held her in contempt regarding her refusal to agree to the valuation warrants little discussion. The court did not rule on the defendant's motion for contempt. The plaintiff is therefore not aggrieved by any action of the court, and we thus reject the plaintiff's claim that the trial court held her in contempt. Accordingly, we proceed directly to the second claim.

We begin by setting forth our standard of review. "Whether a court retains continuing jurisdiction over a case is a question of law subject to plenary review. . . . Whether a court properly exercised that authority, however, is a separate inquiry that is subject to review only for an abuse of discretion." (Internal quotation marks omitted.) *Lehn* v. *Marconi Builders, LLC*, 120 Conn. App. 459, 462–63, 992 A.2d 1137 (2010).

Before reaching the plaintiff's claim on appeal, we note that our courts have no inherent power to transfer property from one spouse to another in a marital dissolution proceeding. See *Rubin* v. *Rubin*, 204 Conn. 224, 228–29, 527 A.2d 1184 (1987). Instead, that power rests upon an enabling statute, General Statutes § 46b-81 (a), which provides in relevant part: "At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either spouse all or any part of the estate of the other spouse. . . ." Critically, under § 46b-81 (a), "the court does not retain continuing jurisdiction over any portion of the judgment that constitutes an assignment of property." (Internal quotation marks omitted.) *Schorsch* v. *Schorsch*, 53 Conn. App. 378, 385, 731 A.2d 330 (1999). The court's authority to distribute the personal property of the parties must be exercised, if at all, at the time that it renders judgment dissolving the marriage. "Therefore, a property division order generally cannot be modified by the trial court after the dissolution decree is entered, subject only to being opened within four months from the date the judgment is rendered under General Statutes § 52-212a." (Internal quotation marks omitted.) Id.

"Although the court does not have the authority to

modify a property assignment, a court, after distributing property, which includes assigning the debts and liabilities of the parties, does have the authority to issue postjudgment orders effectuating its judgment." (Internal quotation marks omitted.) *Fewtrell* v. *Fewtrell*, 87 Conn. App. 526, 531, 865 A.2d 1240 (2005). This court has explained the difference between postjudgment orders that modify a judgment rather than effectuate it. "A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." (Internal quotation marks omitted.) *O'Halpin* v. *O'Halpin*, 144 Conn. App. 671, 677, 74 A.3d 465, cert. denied, 310 Conn. 952, 81 A.3d 1180 (2013). Having set forth our standard of review and the relevant legal principles that guide our analysis, we now consider the parties' arguments on appeal.

The plaintiff claims that the court improperly modified the distribution of the parties' property by ordering her to agree to the terms of Donaldson's amended evaluation that would be incorporated into the QDROs drafted by McMahon. Specifically, the plaintiff contends that the August 20, 2014 separation agreement provided for only one QDRO, and that by ordering the plaintiff to agree to the drafting of two QDROs, the court exceeded the scope of its subject matter jurisdiction by redistributing the parties' assets as contemplated by the parties' agreement. The defendant argues that the separation agreement provided for two QDROs, and that the court was merely effectuating the distribution of property between the two parties.

We agree with the defendant that the court's order was a means of effectuating the distribution of the parties' assets. The terms of the separation agreement contemplate the drafting of more than one QDRO because it specifically states that "[t]he parties agree that Attorney Elizabeth McMahon shall prepare the *QDROs*." (Emphasis added.) Had the agreement been drafted to refer to only one QDRO, the use of the plural "QDROs" would not have been included. In addition, Voya, the administrator of the IBM pension plan, specifically required a separate QDRO to split the pension, and the court found the contemplated divisions could not be done with a single QDRO. Moreover, "courts have continuing jurisdiction to fashion a remedy appropriate to the vindication of a prior . . . judgment . . . pursuant to [their] inherent powers . . . ." (Internal quotation marks omitted). *Mickey* v. *Mickey*, 292 Conn. 597, 604, 974 A.2d 641 (2009). Accordingly, the court acted within the scope of its subject matter jurisdiction by ordering the plaintiff to agree to the terms of the two QDROs, and the plaintiff's second claim fails.

The judgment is affirmed.

* April 21, 2017, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] A QDRO is the exclusive means by which to assign to a nonemployee spouse all or any portion of pension benefits provided by a plan that is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq." *Krafick* v. *Krafick*, 234 Conn. 783, 786 n.4, 663 A.2d 365 (1995).

[2] At issue were the defendant's 401 (k) defined contribution plan administered by Fidelity and his IBM pension, a defined benefit plan administered by Voya.