******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## WIOLETTA KRAHEL *v.* MARIUSZ CZOCH
### (AC 40521)

DiPentima, C. J., and Keller and Elgo, Js.

*Syllabus*

The defendant appealed to this court from the judgment of the trial court dissolving his marriage to the plaintiff and making certain financial orders. During the dissolution proceedings, the defendant failed to comply with a discovery order that sought financial documents relating to his personal finances and construction business for several years. Thereafter, the trial court granted the plaintiff's motion to preclude the defendant from providing evidence in the form of documents and records relating to the discovery order. During trial, the defendant attempted to provide testimony related to the financial matters contained in the preclusion order, but the court sustained the plaintiff's objections thereto, effectively entering a sanction against the defendant. As part of the dissolution judgment, the court had ordered the parties to submit to binding arbitration if they were unable to divide their personal property by agreement. Subsequently, after trial, the court granted the plaintiff's motion for an order to effectuate the judgment and ordered the parties to submit to mediation, in lieu of arbitration, if they could not reach an agreement regarding the division of personal property. On appeal to this court, the defendant claimed, inter alia, that the trial court improperly sanctioned him for violating the discovery order, and improperly entered orders for arbitration and mediation regarding the parties' personal property.

*Held:*

1. The trial court properly entered an order of sanctions for the defendant's violation of the discovery order: that court's finding that the defendant violated the discovery order was not clearly erroneous, as the defendant effectively conceded that the discovery order was reasonably clear, it was undisputed that he failed to produce several documents by the deadline set forth in the order, and the defendant's counsel admitted at trial that it was the defendant's duty to provide the requested information; moreover, the sanction imposed was proportional to the violation and did not reflect an abuse of the trial court's discretion, as the noncompliance with the order was attributed to the defendant rather than legal counsel, the plaintiff would have been prejudiced if the preclusion order had not been entered, and the defendant's claim that the sanction of precluding documents would have been more appropriate than precluding testimony was unavailing.

2. The trial court's order of mediation was an effectuation of the existing judgment, rather than a modification of it, as it was proper for the court, upon the plaintiff's motion, to protect the integrity of its original ruling by fixing the error regarding the order of arbitration, for which the court lacked the authority to issue: nevertheless, because the trial court failed to distribute the personal property and left the parties without a remedy for the distribution of their personal property, the court erred in entering the mediation order to the extent that the order was silent as to whether the court retained its authority to resolve any dispute in the event the mediation proved unsuccessful, as courts do not retain continuing jurisdiction over orders of property distribution, the trial court here did not expressly reserve jurisdiction as requested by the plaintiff in her motion, and although mediation may have been an appropriate mechanism for the court to utilize after trial and prior to rendering judgment, the court was not relieved of its duty to make the ultimate determination of distributing personal property at the time of judgment as mandated by statute (§ 46b-81); accordingly, the trial court erred only to the extent that it failed to reserve final judgment until there was a resolution of the distribution of the remaining items of personal property.

3. The trial court did not abuse its discretion in awarding the defendant a chose in action for $495,000; although the defendant claimed that the court erred in awarding him an uncollectable debt because there was no evidence from which the court could reasonably have concluded

that he could collect $495,000 from the plaintiff's father, the evidence in the record to support the court's finding that the asset had a value of $495,000 was the defendant's own financial affidavit, in which he averred that such sum of money was due to him, the court was entitled to rely on the defendant's sworn affidavit as to the value of that claimed asset and the defendant failed to present any admissible evidence to challenge that value.

4. The trial court did not abuse its discretion in entering a financial order requiring the defendant to pay a debt in the amount $67,500 to his father-in-law; the defendant's claim that he did not have any means to make the payment was not substantiated by evidence in the record, and his claim that it was illogical to order him to pay a debt to a person who owed him more money was not supported by case law.

Argued May 14—officially released November 6, 2018

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford and tried to the court, *Gould, J.*; judgment dissolving the marriage and granting certain other relief, from which the defendant appealed to this court; thereafter, the court, *Gould J.*, granted the plaintiff's motion for an order to effectuate the judgment, and the defendant filed an amended appeal with this court. *Reversed in part; further proceedings.*

*Jeffrey D. Ginzberg*, for the appellant (defendant).

*Yakov Pyetranker*, for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant, Mariusz Czoch, appeals from the judgment of the trial court dissolving his marriage to the plaintiff, Wioletta Krahel. On appeal, the defendant claims that the court improperly (1) sanctioned him for violating a discovery order that precluded him from testifying about his current financial condition and business, (2) entered orders for arbitration and mediation relative to personal property leaving the dispute unresolved at the time of judgment, and (3) awarded a chose in action and obligation to repay a debt. We agree in part with the defendant's second claim and, accordingly, reverse in part the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. The parties, who both immigrated to the United States from Poland, married in Stamford on January 26, 2005. There are two minor children born issue of the marriage. Neither child support nor custody of those children is at issue in this appeal.

Before emigrating from Poland, the plaintiff was employed as an attorney. At the time of dissolution, she was employed by International Fund Services, LLC, with an annual salary of $106,217. The defendant, at that time, was self-employed in the construction industry. The name of his business is Champion Development, LLC (Champion). Fifty percent of Champion is owned by the defendant's son from a previous relationship. According to the defendant's April 11, 2017 financial affidavit, his net weekly income is $1,597.73, which includes income from Champion, "side work," and weekly rental income from one of the two marital properties.

Those two properties are both located on Soundview Drive in Stamford. At the time of trial, the plaintiff resided at 72 Soundview Drive and the defendant, along with tenants, resided at 80 Soundview Drive. The plaintiff was the sole owner of both properties. The 72 Soundview Drive property had a fair market value of $525,000 and was encumbered by a mortgage of $351,414.20. The 80 Soundview Drive property had a fair market value of $625,000, subject to a $436,742.60 mortgage. The plaintiff also owned property in Poland valued at $150,000, and the defendant owned property in Poland that was valued at $200,000.

In March, 2015, the plaintiff filed the present dissolution action, claiming that the parties' marriage had broken down irretrievably. Following a trial, the court, on May 18, 2017, dissolved the marriage. The court found that the defendant was more at fault for the breakdown of the marriage and that the plaintiff was more credible regarding the reasons for its breakdown.

In its memorandum of decision, the court issued several financial orders related to property distribution

and assignment of debt.[1] The parties agreed on a shared parenting plan, which the court approved and incorporated by reference into the judgment of dissolution. The court did not award alimony to either party. The court awarded the two Soundview Drive properties to the plaintiff and awarded each party their respective properties in Poland. The plaintiff also was awarded a 2010 BMW 750IL motor vehicle, her jewelry, and her 401(k) accounts.[2]

In addition, the court awarded the defendant "the asset listed [on his financial affidavit] as money due to defendant from father-in-law" and his interest in Champion. According to the financial affidavits submitted by the defendant, $495,000 was due to the defendant for work and improvements that he performed on his father-in-law's property in Poland. The defendant was also awarded a 2003 Dodge Ram motor vehicle, a 2005 Sea Ray Sundancer vessel, a 2008-2009 Sea Ray 340 Sundancer vessel, a Polaris snowmobile, a 2006 Bennington catamaran, and two pianos.[3]

Each party was awarded the balance of their separate bank accounts, as reflected on their respective financial affidavits. In addition to the aforementioned financial orders, the court ordered that, if the parties were unable to divide their personal property by agreement, they were to submit to binding arbitration with a mutually agreed upon arbitrator.[4] On June 6, 2017, the defendant filed the present appeal from the judgment of dissolution. The plaintiff subsequently filed a motion for an order to effectuate the judgment, in which she requested a referral of the remaining personal property issues to mediation. In response, the court amended its order to state that "[t]he parties shall divide their personal property by agreement, and, if they are unable to do so, shall participate in mediation before a family relations counselor in the absence of such agreement." The court also ordered that the parties would be equally responsible for certain loans they had obtained from the plaintiff's father, which totaled $135,000. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly sanctioned him for violating a discovery order that precluded him from testifying about his current financial condition and business. Specifically, the defendant argues that the discovery order was not violated, the remedy of preclusion was disproportionate to the harm, and the court's preclusion adversely affected the result of the trial.[5] In response, the plaintiff argues that the defendant committed a clear violation of the court's order, that the preclusion order was proportionate to the failure to comply with the court's order, and that no harm resulted from the preclusion. We agree with the plaintiff.

The following additional facts are relevant to this issue. On June 13, 2016, the plaintiff served a supplemental request for disclosure and production on the defendant. Prior to trial, the plaintiff, on March 21, 2017, filed a motion for order of compliance pursuant to Practice Book §§ 13-14 and 25-32A, due to the defendant's failure to comply with the plaintiff's supplemental request. That motion identified numerous outstanding discovery requests including, most notably, his 2014, 2015, and 2016 individual income tax returns and those of Champion. In addition, the defendant failed to produce a current sworn financial affidavit, any general ledgers for Champion, any profit and loss statements for Champion, bank statements, and several other financial statements.

On April 10, 2017, the court held a hearing on those discovery issues. At that hearing, the plaintiff requested an order precluding the defendant from offering any evidence at trial that would be within the scope of the document request with which he had failed to comply. Although the defendant was not present for the hearing, his counsel represented that "the defendant had an accountant who fired him right around the time that this action started. I believe it was . . . in 2015 or 2016. At that point in time [the defendant] had not filed any tax returns. The last return he had filed was 2013. He's found a new account[ant] who has had to play catch up for the last three years in putting all of these documents together." The defendant's counsel then assured the court that the defendant would furnish the documents in question by Monday, April 17, 2017. The defendant's counsel stated that "it is [her] understanding from [the defendant] . . . that those documents are being prepared and should be ready by Monday to be provided . . . to [her] so that [she] can in turn provide to the plaintiff."[6]

At the conclusion of the hearing, the court ordered production of the outstanding documents by Monday, April 17, 2017, and reserved the issue of sanctions for the trial judge.[7] The defendant, however, failed to produce the requested financial documents by the April 17 deadline.[8] The plaintiff thus filed a motion to preclude and for sanctions, which sought to preclude the defendant from offering any testimonial or documentary evidence with respect to the substance of those financial matters.

On the first day of trial, April 18, 2017, the court heard from the parties regarding the motion to preclude. The plaintiff represented that the defendant's compliance with the order was wholly inadequate and that the plaintiff did not receive any documents related to the defendant's income, the defendant's business, or the defendant's bank statements. The defendant's counsel then stated: "[M]y client's position is that the accountant failed him. The accountant was supposed to get it

done. She said that . . . she was going to get it done and then Monday came and the accountant didn't get it done." In response, the court noted that the defendant was obligated to provide the requested financial information and emphasized that the discovery request had been pending since June, 2016.

The court then asked the plaintiff to identify the particular documentation that she had not received in contravention of the court's production order. The plaintiff at that time detailed several missing documents, including (1) the personal income tax returns of the defendant for tax years 2014, 2015, and 2016; (2) Champion's income tax returns for tax years 2014, 2015, and 2016; (3) 1099 tax forms for tax years 2015 and 2016; (4) Schedule K-1 tax forms for the defendant or Champion for years 2014, 2015, and 2016; (5) a general ledger for Champion for years 2014, 2015, and 2016; (6) a profit and loss statement for Champion for years 2014, 2015, and 2016; (7) account statements for a Bank Polski account; (8) account statements from a People's United Account associated with Champion from July 1, 2015, to the present; (9) any documents related to the defendant's properties in Poland; (10) any documents related to wire transfers sent to or received from Poland; and (11) receipts from travel expenses and expenses associated with their children. The plaintiff thus asked the court to preclude the defendant "from offering any evidence, by way of his testimony, or through records" with respect to those matters. The court granted the plaintiff's motion to preclude any such evidence as to accounts, statements, and records listed by counsel as related to those matters.

Days later, during trial, the defendant's counsel asked the defendant about Champion's hiring practices without giving a specific time frame. The plaintiff objected to the question, claiming that any testimony regarding the years for which the defendant failed to produce the company's financial information was precluded. The court sustained the plaintiff's objection. The defendant's counsel nevertheless continued to ask questions about the defendant's business during the 2014 to 2016 time period and attempted to provide an offer of proof. In response, the court continued to sustain the plaintiff's objections on the basis of its outstanding preclusion order and, as a result of that conduct, ultimately entered a futher order of sanctions against the defendant preventing him from offering testimony related to matters referenced by the preclusion order. The defendant now challenges the propriety of the preclusion order.

In *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 776 A.2d 1115 (2001), our Supreme Court set forth the legal standard governing appellate review of a court's order of sanctions for a discovery order violation. "In order for a trial court's order of

sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met. First, the order to be complied with must be reasonably clear. In this connection, however, we also state that even an order that does not meet this standard may form the basis of a sanction if the record establishes that, notwithstanding the lack of such clarity, the party sanctioned in fact understood the trial court's intended meaning. This requirement poses a legal question that we will review de novo. Second, the record must establish that the order was in fact violated. This requirement poses a question of fact that we will review using a clearly erroneous standard of review. Third, the sanction imposed must be proportional to the violation. This requirement poses a question of the discretion of the trial court that we will review for abuse of that discretion." Id., 17–18.

We first address whether the discovery order was reasonably clear. On appeal, the defendant does not contest the clarity of the discovery order. He also has not suggested that he was uncertain regarding the fact or nature of his obligations. Having failed to address the first prong of *Millbrook*, the defendant effectively concedes that the order was reasonably clear. See *Yeager* v. *Alvarez*, 302 Conn. 772, 785, 31 A.3d 794 (2011).

Under the second prong of the *Millbrook* test, we examine the record to determine whether the discovery order was violated. "If an appellate court is called upon to review the findings of the trial court we apply our clearly erroneous standard, which is the well settled standard for reviewing a trial court's factual findings. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Faile* v. *Stratford*, 177 Conn. App. 183, 200, 172 A.3d 206 (2017).

The defendant claims that he did not violate the court's discovery order because the documents that he failed to produce did not exist, as his accountant had not created them yet and "[o]ne cannot produce what does not exist." The defendant, therefore, argues that violating the discovery order was impossible. At trial, however, his counsel duly admitted that it was the defendant's duty to provide the requested information:

"The Court: Whose responsibility is it to talk to the accountant, your client, right?

"[The Defendant's Counsel]: Obviously, I mean, you know.

"The Court: Whose responsibility is it to provide the information, your client, right?

"[The Defendant's Counsel]: Yes.

"The Court: Okay."

Moreover, during the discovery hearing, the defendant's counsel repeatedly represented that the defendant would produce the requested documents in accordance with the court's discovery order. It nonetheless is undisputed that the defendant failed to produce several documents by the deadline set forth in that order. We, therefore, cannot conclude that the court's finding that the defendant violated its discovery order was clearly erroneous.

We next address the third prong of the *Millbrook* test, under which we utilize the abuse of discretion standard to determine whether the sanction imposed was proportional to the violation. "In reviewing a claim that [the] discretion [of the trial court] has been abused, the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . [T]he ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) Id., 201. When reviewing the reasonableness of a trial court's imposition of sanctions for violation of a discovery order, we employ the following factors: "(1) the cause of the [disobedient party's] failure to respond to the posed questions, that is, whether it is due to inability rather than the willfulness, bad faith or fault of the [disobedient party] . . . (2) the degree of prejudice suffered by the opposing party, which in turn may depend on the importance of the information requested to that party's case; and (3) which of the available sanctions would, under the particular circumstances, be an appropriate response to the disobedient party's conduct." (Internal quotation marks omitted.) *Yeager* v. *Alvarez*, supra, 302 Conn. 787.

An analysis of the three factors set forth in *Yeager* supports the court's decision to preclude the defendant's testimony. With respect to the first factor, the defendant claims that the failure to produce the requested documents was "not due to willfulness; but rather inability to comply." The defendant repeatedly asserts throughout his brief that the documents did not exist because his accountant "failed" him and his new accountant "had not had time to prepare the defendant's tax returns or his profit and loss statements." The plaintiff, by contrast, argues that the defendant's conduct in failing to produce the requested documents was wilful or, at the very least, complicit. In so doing, she emphasizes that the defendant admitted at trial that it was his responsibility, and not his accountant's responsibility, to produce the requested documents.

The defendant attempts to analogize the sanctioned conduct in this case to the sanctioned conduct in *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, 165 Conn. App. 737, 761, 140 A.3d 321 (2016), aff'd, 328 Conn. 60, 176

A.3d 1167 (2018). In *Ridgaway*, this court reversed the trial court's rendering of a judgment of nonsuit against a party for its noncompliance with a court order because the judgment of nonsuit was disproportionate to the noncompliance. Id. The sanctioned noncompliance in *Ridgaway*, however, is clearly distinguishable from this case because it was attributed solely to the attorney's conduct. Id., 760–61. Here, the noncompliance is attributed to the defendant rather than legal counsel. Furthermore, the severity of the sanction of nonsuit in *Ridgaway* is more severe than a sanction precluding testimony. See *Yeager* v. *Alvarez*, supra, 302 Conn. 781.

With respect to the second *Yeager* factor, we look to the degree of prejudice suffered by the plaintiff had the preclusion order not entered. Although the defendant argues that "the plaintiff didn't suffer such harm that she needed an order of preclusion," his argument overlooks the importance of the requested documents and the harm to the plaintiff as a result of the defendant's failure to produce such documents. The documents requested by the plaintiff, including tax documents and statements from the defendant's business, were crucial financial documents related to the current financial situation of the defendant. It is axiomatic that the party's finances are material to dissolution of marriage actions. Here, the defendant failed to present any documentation regarding his income, other than that stated in his financial affidavit. As the plaintiff notes in her brief, had the preclusion order not entered, the defendant would have had the ability to testify as to his income outside of the information set forth in his financial affidavit and the plaintiff would not have had the ability to confirm the accuracy of such testimony.

With respect to the third factor, the defendant argues that "the sanction of limited preclusion of tax accounting documents would have sufficed; and the sanction of preclusion of testimony was overkill." The defendant essentially argues that the sanction precluding documents would have been more appropriate than precluding testimony. The alternative sanction suggested by the defendant would not have been an appropriate response to the defendant's failure to produce the requested documents. Such an alternative sanction would have defeated the purpose of discovery and precluded the very documents which the plaintiff requested. "[T]he purpose of the rules of discovery is to make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." (Internal quotation marks omitted.) *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 50, 634 A.2d 870 (1993). We, therefore, conclude that the sanction imposed in the present case was proportional to the violation and does not reflect an abuse of the court's discretion. In accordance with

the principles set forth in *Millbrook* and *Yeager*, the court properly entered an order of sanctions for the defendant's violation of the discovery order.[9]

II

The defendant next claims that the court failed to enter a property distribution order with respect to various items of personal property, leaving him without a remedy for that property. He raises several issues related to this claim, contending that the court improperly (1) ordered arbitration, (2) modified a property order postjudgment, (3) deprived the defendant of his right to be heard, (4) abdicated its judicial function by ordering arbitration and ultimately mediation to resolve the personal property distribution, and (5) failed to value the personal property prior to entering its order requiring arbitration. Furthermore, the defendant claims that the entirety of the trial court's ruling requires reversal because "the court committed error that cannot be rectified by merely having a trial on personal property in a vacuum."

The following additional facts are relevant to the defendant's claim. Paragraph 10 of the court's memorandum of decision originally stated: "The parties shall divide their personal property by agreement, and, if they are unable to do so, will submit to binding arbitration with a mutually-agreed-upon arbitrator. If they are unable to agree on an arbitrator, the court will make the appointment." The parties, however, had not entered into a voluntary arbitration agreement. Accordingly, the plaintiff subsequently filed a motion for an order to effectuate the court's judgment, in which she requested that, in lieu of arbitration, the court issue an order referring the distribution of personal property to the family relations division of the Superior Court for mediation. The plaintiff further requested that the court retain jurisdiction over that referral. The defendant filed an objection to the plaintiff's motion, claiming that the change would be an impermissible modification of the judgment. Neither party requested oral argument.

On October 17, 2017, the court granted the plaintiff's motion and amended paragraph 10 of its memorandum of decision to state: "The parties shall divide their personal property by agreement, and, if they are unable to do so, shall participate in mediation before a family relations counselor in the absence of such agreement." In so doing, the court did not expressly reserve jurisdiction over the referral.

As a preliminary matter, we note that both parties acknowledge that the court did not have the authority to order the parties to submit to arbitration in the absence of an agreement.[10] We need not address this issue at length because, as we will explain further, the court subsequently amended its order to require mediation rather than arbitration.[11]

On appeal, the parties disagree about the propriety of the court's order amending the method of dispute resolution from arbitration to mediation. The defendant claims that the court's mediation order was a modification of an existing judgment for which it lacked authority. The plaintiff argues that because the court's mediation order was intended to permit the parties to resolve their personal property dispute with the assistance of a third party, the order simply effectuated the existing judgment. We agree with the plaintiff.

It is well established that "[a]lthough the court does not have the authority to modify a property assignment, a court, after distributing property, which includes assigning the debts and liabilities of the parties, does have the authority to issue postjudgment orders effectuating its judgment. This court has explained the difference between postjudgment orders that modify a judgment rather than effectuate it. A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." (Citations omitted; internal quotation marks omitted.) *Richman* v. *Wallman*, 172 Conn. App. 616, 620–21, 161 A.3d 666 (2017); see also *Roberts* v. *Roberts*, 32 Conn. App. 465, 471–72, 629 A.2d 1160 (1993) (order to auction property when judgment required sale of property constituted effectuation of judgment).

It is undisputed that the parties did not agree to arbitration and, in the absence of an agreement, the court lacked the authority to order them to submit to binding arbitration. Because, as we discuss later in this opinion, the court can order the parties to mediation, the court could properly protect the integrity of its original ruling by fixing an error upon motion of a party. "We have recognized that it is within the equitable powers of the trial court to fashion whatever orders [are] required to protect the integrity of [its original] judgment." (Internal quotation marks omitted.) Id., 471; see also *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 670, 594 A.2d 958 (1991). On the particular facts of this case, we are persuaded that the court's order of mediation was an effectuation of the existing judgment, rather than a modification of it.

The order effectuating the judgment, however, did not expressly reserve jurisdiction as requested by the plaintiff.[12] Thus, we address the defendant's argument that the order is improper because the court failed to distribute the personal property and left the parties without a remedy for the distribution of their personal property.[13]

Pursuant to the court's order, the parties were to "divide their personal property by agreement." In the event that the parties were unable to agree, the court ordered them to "participate in mediation before a family relations counselor." The court's order nonetheless is silent as to whether the court retained its authority to resolve any such dispute in the event that mediation proved unsuccessful. As such, the court did not expressly "reserve jurisdiction" as requested by the plaintiff in her motion for an order to effectuate the court's judgment. We, therefore, turn to the issue of whether the court, in entering the mediation order, relegated the parties to a state of "legal limbo," as the defendant contends.

At its core, the failure to resolve the distribution of personal property at the time of judgment and the referral to mediation implicate the issue of whether the court improperly delegated its judicial authority. That issue involves a legal question over which we exercise plenary review. See *Weiss* v. *Weiss*, 297 Conn. 446, 458, 998 A.2d 766 (2010); *Zilkha* v. *Zilkha*, 180 Conn. App. 143, 170, 183 A.3d 64, cert. denied, 328 Conn. 937, 183 A.3d 1175 (2018). "It is well settled . . . that [n]o court in this state can delegate its judicial authority to any person serving the court in a nonjudicial function. The court may seek the advice and heed the recommendation contained in the reports of persons engaged by the court to assist it, but in no event may such a nonjudicial entity bind the judicial authority to enter any order or judgment so advised or recommended. . . . A court improperly delegates its judicial authority to [a nonjudicial entity] when that person is given authority to issue orders that affect the parties or the children. Such orders are part of a judicial function that can be done only by one clothed with judicial authority." (Citation omitted; internal quotation marks omitted.) *Kyle S.* v. *Jayne K.*, 182 Conn. App. 353, 371–72, A.3d (2018); see also *Keenan* v. *Casillo*, 149 Conn. App. 642, 660, 89 A.3d 912, cert. denied, 312 Conn. 910, 93 A.3d 594 (2014). "We have consistently held that the trial court is without jurisdiction to delegate the authority to resolve divisions of personalty in dissolution actions." *Casey* v. *Casey*, 82 Conn. App. 378, 388, 844 A.2d 250 (2004).

In *Casey* v. *Casey*, supra, 82 Conn. App. 388, this court held that the trial court did not err in ordering the parties to mediation for specified items of personal property, although we looked unfavorably on the judgment to the extent that it left the distribution of personal property unresolved. The trial court's order in that case failed to address items of personal property not subject to its mediation order and "thereby relegated [the] ownership [of such property] to a state of perpetual limbo," a result we characterized as "untenable." Id. In so doing, we emphasized that "when parties submit an issue to the court for resolution, they are entitled to have that

issue considered, absent jurisdictional defects or other substantive impairments." Id.

What this court did not address in *Casey* is whether the mediation order itself, if mediation is unsuccessful, also improperly leaves the parties in a state of perpetual limbo, especially in the context of General Statutes § 46b-81, which requires the court to distribute property at the time of the dissolution judgment.

"[C]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property appurtenant to a dissolution proceeding rests on . . . § 46b-81. That section provides in relevant part: At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either [spouse] all or any part of the estate of the other. . . . Accordingly, the court's authority to divide the personal property of the parties, pursuant to § 46b-81, must be exercised, if at all, at the time that it renders judgment dissolving the marriage." (Citation omitted; internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, 131 Conn. App. 352, 358, 29 A.3d 159 (2011).

Unlike orders for the periodic payment of alimony, the court does not retain continuing jurisdiction over orders of property distribution nor can it expressly reserve jurisdiction with respect to matters involving lump sum alimony or the distribution of property. As our Supreme Court explained in *Smith* v. *Smith*, 249 Conn. 265, 273, 752 A.2d 1023 (1999), "[o]n its face, the statutory scheme regarding financial orders appurtenant to dissolution proceedings prohibits the retention of jurisdiction over orders regarding lump sum alimony or the division of the marital estate. . . . General Statutes § 46b-82 . . . provides that the court may order alimony [a]t the time of entering the [divorce] decree . . . . General Statutes § 46b-86, however, explicitly permits only modifications of any final order[s] for the *periodic payment of permanent alimony* . . . . Consequently, the statute confers authority on the trial courts to retain continuing jurisdiction over orders of periodic alimony, but not over lump sum alimony or property distributions pursuant to § 46b-81." (Emphasis in original; internal quotation marks omitted.) Moreover, in *Bender* v. *Bender*, 258 Conn. 733, 761, 785 A.2d 197 (2001), our Supreme Court, albeit in dicta, expressly rejected the practice of reserving jurisdiction over personal property. Cf. *Cunningham* v. *Cunningham*, 140 Conn. App. 676, 686, 59 A.3d 874 (2013) (having determined formula for division of assets received by the defendant pursuant to nonqualified plan, court had discretion to retain jurisdiction to effectuate its judgment).

It is axiomatic that an order for mediation ultimately may not resolve matters in a given dispute, because the resolution of such matters necessarily is dependent on

the willingness of the parties both to participate meaningfully and to agree to some ultimate resolution. As contemplated by our rules of practice, court-ordered mediation to a family relations officer is ordinarily a resource utilized prior to a final hearing and judgment. As Practice Book § 25-60 (a) states, "[w]henever . . . the Court Support Services Division Family Services Unit has been ordered to conduct mediation . . . *the case shall not be disposed of* until the report has been filed as hereinafter provided, and counsel and the parties have had a reasonable opportunity to examine it prior to the time the case is to be heard, unless the judicial authority orders that the case be heard before the report is filed." Significantly, the language in this provision specific to the court's order to conduct mediation was not in effect when *Casey* was decided.[14] Thus, although under *Casey*, mediation may be an appropriate mechanism which the court may utilize after trial and prior to judgment entering, we conclude that the court is not relieved of its duty to make the ultimate determination of distributing personal property at the time of judgment as mandated by General Statutes § 46b-81. As such, we conclude that the court erred only to the extent that it failed to reserve final judgment until there was resolution of the distribution of the remaining items of personal property.[15]

Because we must remand this case to the trial court with direction to open the judgment and resolve the outstanding personal property dispute, we are required to address the further question of whether the court's error implicates the mosaic rule, which the defendant, in his fifth claim of error, alludes to by asserting that the court cannot "distribute just the personal property without reference to the whole, or in a vacuum of information."

Under Connecticut law, "courts are empowered to deal broadly with property and its equitable division incident to dissolution proceedings. . . . Generally, we will not overturn a trial court's division of marital property unless it misapplies, overlooks, or gives a wrong or improper effect to any test or consideration which it was [its] duty to regard." (Internal quotation marks omitted.) *Greco* v. *Greco*, 275 Conn. 348, 355–56, 880 A.2d 872 (2005). Respecting the complex nature of the court's determinations, we have applied what has become known as the "mosaic rule" when we have determined that there has been error in the trial court's financial orders. *Tuckman* v. *Tuckman*, 127 Conn. App. 417, 425–26, 14 A.3d 428 (2011), aff'd, 308 Conn. 194, 61 A.3d 449 (2013).

"We previously have characterized the financial orders in dissolution proceedings as resembling a mosaic, in which all the various financial components are carefully interwoven with one another. . . . Accordingly, when an appellate court reverses a trial

court judgment based on an improper alimony, property distribution, or child support award, the appellate court's remand typically authorizes the trial court to reconsider all of the financial orders. . . . We also have stated, however, that [e]very improper order . . . does not necessarily merit a reconsideration of all of the trial court's financial orders. A financial order is severable when it is not in any way interdependent with other orders and is not improperly based on a factor that is linked to other factors. . . . In other words, an order is severable if its impropriety does not place the correctness of the other orders in question. Determining whether an order is severable from the other financial orders in a dissolution case is a highly fact bound inquiry." (Citations omitted; internal quotation marks omitted.) *Tuckman v. Tuckman*, 308 Conn. 194, 214, 61 A.3d 449 (2013).

Having found error only with respect to the court's orders regarding the parties' furnishings, which, at most, are valued at $15,000; see footnote 13 of this opinion; we do not conclude that the mosaic rule is implicated here. The record before us indicates that, as to the property duly distributed by the court, the value of the plaintiff's property totaled more than $550,000, less $67,500 owed in debt from the loan the parties received from her father, while the defendant retained his property, which the defendant in his financial affidavit had valued at more than $750,000, including the asset described in that affidavit as "[m]oney due to defendant from father-in-law," less $67,500. The assets awarded to the defendant also include his interest in Champion, which he retains free from any claim of the plaintiff. The court's order as to the furnishings is thus clearly severable given the nature of the personal property at issue and its relative value as compared to the other assets distributed by the court.

### III

The defendant's final claim is that the court abused its discretion in awarding the defendant a chose in action for $495,000 and ordering him to pay $67,500 to his father-in-law.[16] We disagree.

In its memorandum of decision, the court awarded the defendant "the asset listed as money due to defendant from father-in-law." (Internal quotation marks omitted.) The defendant's financial affidavits repeatedly listed an asset of $495,000 that was due to the defendant for work and improvements that he performed on his father-in-law's property in Poland.

Our review of the propriety of that award is well established. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the

facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Powell-Ferri* v. *Ferri*, 326 Conn. 457, 464, 165 A.3d 1124 (2017).

### A

The defendant first claims that, because there is no evidence from which the court could reasonably have concluded that he could collect $495,000 from the plaintiff's father, it was error for the court to award him an uncollectable debt.[17] We disagree.

In his brief, the defendant asserts that he testified at trial that his father-in-law would never pay him back and that it would be impossible to collect the money because it would require a lawsuit, which would be unsuccessful. The defendant further argues that he "brought to the court's attention the fact that the $495,000 is uncollectable and the court assigned an uncollectable debt to the defendant's side of the ledger." Our review of the transcript, however, reveals no such testimony. The alleged testimony that the defendant refers to was stricken and remains unchallenged on appeal.[18] As a result, no evidence of the defendant's inability to collect the debt was properly before the court.

The court's findings of fact are clearly erroneous when there is no evidence in the record to support them. The evidence in the record to support the court's finding that the asset had a value of $495,000 is the defendant's own financial affidavit, in which he averred that such sum of money was due to him. The court was entitled to rely on the defendant's sworn affidavit as to the value of that claimed asset and the defendant failed to present any admissible evidence to the contrary. Accordingly, the court was well within its broad discretion in awarding the chose in action to the defendant.

### B

The defendant also argues that the court improperly ordered him to pay $67,500 to his father-in-law because he does not have any means to make the payment and "there is no logical rationale for ordering the defendant

to pay a debt to the same person that owes him considerably more in money.''

The defendant's sworn affidavit dated April 11, 2017, lists his total net monthly income as $6870.26. Furthermore, insofar as the defendant claims that he does not have the means to make payment, we note that the defendant was awarded assets including two pianos that, alone, have a total value of over $73,000. In addition to the Dodge Ram vehicle, the pianos, multiple properties, and multiple boats, the defendant was awarded his interest in Champion. The value of his interest in Champion remains unknown due to the fact that the defendant failed to provide the current financial records of the company, in contravention of the court's discovery order.

The defendant's argument that there is no logical rationale for ordering him to pay a debt to the same person that owes him more money is not supported by any case law. The defendant's contention that he does not have the means to make payment is not substantiated by evidence in the record.[19] Accordingly, we cannot conclude that the court abused its discretion in entering such a financial order.

The judgment is reversed only as to the order concerning the personal property subject to the mediation order and the case is remanded to the trial court with direction to open the judgment and resolve the distribution of property still outstanding; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] On August 30, 2017, the defendant filed a motion for articulation, which the court summarily denied on September 8, 2017. The defendant filed a motion for review of the denial of his motion for articulation with this court on September 18, 2017. This court granted the defendant's request in part and ordered the trial court to articulate the value of the personal property delineated in its memorandum of decision. In its articulation, the court stated that the valuation of that property was "to be as the parties stated in their sworn financial affidavits." On appeal, the parties do not contest the value of the assets that were awarded to each party. Moreover, we note that the court primarily utilized the phrase "shall retain" when issuing financial orders reflecting that assets of the plaintiff and the defendant were predominately separately owned.

[2] According to the parties' financial affidavits, the value of the plaintiff's BMW is $24,000, the value of the jewelry is $4000, and the value of the two 401(k) accounts is $8644. The defendant did not list any of the aforementioned assets on his financial affidavit although he lists a second BMW valued at $17,000 located in Poland. Pursuant to the court's order granting the plaintiff's motion for clarification, the court effectively ordered that the plaintiff shall retain the BMW with a VIN number ending in 1247. No order was issued regarding the BMW in Poland.

[3] On cross-examination, the defendant admitted that one of the pianos was purchased at a cost of $65,000 from the account of the defendant's company, Champion, and was not listed on the defendant's financial affidavit. Acknowledging no commercial use for the piano, the defendant testified that he and his son owned the piano.

[4] The court's order stated in relevant part: "The parties shall divide their personal property by agreement, and, if they are unable to do so, will submit to binding arbitration with a mutually agreed upon arbitrator. If they are unable to agree on an arbitrator, the court will make the appointment."

[5] In his brief the defendant argues several other issues within this claim, including a general argument that the court must consider the present

financial circumstances of the parties, that the defendant was deprived of a right to cross-examine, and that the defendant was denied his due process right to make an offer of proof. We need not review these assertions as they are either inadequately brief or subsumed under the defendant's overarching theory that the court erred in precluding his testimony.

"It is well settled that [w]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Pryor* v. *Pryor*, 162 Conn. App. 451, 458, 133 A.3d 463 (2016).

The defendant cites to General Statutes § 46b-81 for the principle that the court must consider the present financial circumstances of the parties and, by precluding testimony from the defendant, failed to do so. The defendant, however, provides no analysis beyond the assertion of that principle. To the extent that the defendant argues that he was deprived of a right to cross-examine a witness, the record is clear that the defendant was not precluded from cross-examining any witnesses at trial. Instead, it appears that the defendant improperly equates the limited preclusion of his testimony with his due process right to cross-examine witnesses, a proposition we summarily reject because the issue of preclusion is properly before this court. With respect to his claim that he was deprived of making an offer of proof, the defendant has failed to demonstrate that he was prejudiced because the record is inadequate to address his underlying claim that the court improperly precluded his testimony. See *Casalo* v. *Claro*, 147 Conn. 625, 631,165 A.2d 153 (1960). Accordingly, our analysis of the preclusion order will address only such arguments that are briefed properly.

[6] As the court addressed each request, the defendant's counsel continued to reiterate to the court that the documents requested were being prepared and would be available on Monday, April 17, 2016. The following exchange occurred:

"The Court: All right. Six, you're looking for a general ledger and a [profit and loss statement] for [Champion] for 2014, 2015, 2016.

"[The Defendant's Counsel]: And again, Your Honor, these are documents, which I understand from my client, are being compiled along with the tax returns by his accountant. . . . And should be among the documents that are provided on Monday."

[7] At the discovery hearing, the following colloquy occurred:

"The Court: So then, [counsel for the plaintiff], you're asking that there be some preclusion order entered for failure to produce.

"[The Plaintiff's Counsel]: Well, Your Honor, I guess I have to wait to see what we get.

"The Court: I think you do.

"[The Plaintiff's Counsel]: Then, Your—I suppose Your Honor has the discretion to say that the trial court can take up issue of sanctions . . .

"The Court: Yes.

"[The Plaintiff's Counsel]: . . . if there's a claim of failure to comply.

"The Court: Right. And I think that would properly go before the trial court . . . ."

[8] According to the plaintiff's motion to preclude, "[o]n April 17, 2017 at 3:03 p.m., the [d]efendant provided partial compliance with the [p]laintiff's supplemental request for production. The [d]efendant['s] compliance only included an amended financial affidavit, a mortgage statement, documents regarding capital improvements, a passport, two handwritten receipts for children's expenses, photographs of the children, and a membership letter from Stepping Stone Children's museum."

[9] Because we conclude that the court's order of sanctions was proper, we need not address whether the court's preclusion adversely affected the result of the trial. We find it necessary to note, however, that the defendant was unable to articulate how much he earned when asked by the plaintiff's counsel. For example, at the April 20, 2017 hearing, the following colloquy occurred:

"[The Plaintiff's Counsel]: Sir, you have not been candid or honest on

what your income has been on any paper you filed with this court, have you?

"[The Defendant]: I have no idea. I'm not an accountant.

"[The Plaintiff's Counsel]: Right. You have no idea and because you don't have any idea, nobody in this courtroom has any idea of what you really earn; isn't that right?

"[The Defendant]: As well as you don't. Yes. That's correct."

[10] "A court does not . . . have the authority to order parties to submit such issues to arbitration absent a voluntary arbitration agreement executed between the parties. Arbitration is a creature of contract and without a contractual agreement to arbitrate there can be no arbitration. . . . [T]he basis for arbitration in a particular case is to be found in the written agreement between the parties. . . . Parties who have contracted to arbitrate certain matters have no duty to arbitrate other matters which they have not agreed to arbitrate. Nor can the courts, absent a statute, compel the parties to arbitrate those other matters." (Citations omitted; internal quotation marks omitted.) *Budrawich* v. *Budrawich*, 156 Conn. App. 628, 649, 115 A.3d 39, cert. denied, 317 Conn. 921, 118 A.3d 63 (2015).

[11] To the extent that the defendant argues that he was deprived of his right to be heard because the court failed to grant a hearing on the plaintiff's motion to effectuate the court's judgment, we reject this claim. Oral argument on such motions is not a matter of right. The record in the present case reflects that the defendant (1) filed an objection and, thus, his position was before the court, (2) did not request oral argument pursuant to Practice Book § 11-18 (f), (3) has not claimed and cannot demonstrate that the motion before the court was arguable as of right pursuant to subsection (a) of § 11-18, and (4) did not seek reargument after the court's ruling. His claim, therefore, is unavailing.

[12] With respect to the defendant's fifth claim, we note that the court was not required to value the contested personal property. The defendant claims that the court failed to find values of personal property that it ordered to be arbitrated and by distributing some, but not all of the property, the court did not consider the impact of the economic value on the parties' estates. The defendant's claim is governed by the abuse of discretion standard and, considering that "the trial court must consider the value of the assets, but need not assign them specific values"; *Burns* v. *Burns*, 41 Conn. App. 716, 721, 677 A.2d 971, cert. denied, 239 Conn. 906, 682 A.2d 1011 (1996); we cannot conclude that it was an abuse of the court's discretion not to assign specific values to the personal property items.

[13] The personal property subject to the mediation order was contested personal property that the court did not distribute—namely, certain furnishings that the plaintiff valued at $2500 and the defendant valued at $15,000. On appeal, the defendant suggests that ownership of the his BMW automobile in Poland, which the court did not specifically address, also was unresolved. The plaintiff, however, never claimed an interest in that vehicle. Her financial affidavit plainly indicates that she claimed ownership over only one BMW and that the court's order stated that the plaintiff "shall retain" the 2010 BMW 750IL with a VIN number ending in 1247. Unlike the 2005 Sea Ray Dancer vessel, in which the plaintiff claimed a 50 percent ownership interest and which the court awarded to the defendant, the defendant's title to the BMW in Poland was unaffected by the judgment. As such, we conclude that only the parties' furnishings were contested and subject to the mediation order.

[14] The analogous Practice Book provision in effect in 2004 stated in relevant part: "Whenever, in any family matter, an evaluation or study has been ordered, the case shall not be disposed of until the report has been filed as hereinafter provided, and counsel and the parties have had a reasonable opportunity to examine it prior to the time the case is to be heard, unless the judicial authority shall order that the case be heard before the report is filed . . . ." Practice Book (2004) § 25-60 (a).

[15] In so holding, we reject the plaintiff's original entreaty to the trial court that it "reserve jurisdiction" postjudgment, as it is clear that a reservation of jurisdiction for property matters is improper under *Bender* v. *Bender*, supra, 258 Conn. 761.

[16] The defendant vaguely claims that the court made a disproportionate award of assets because the $495,000 was uncollectable and without the $495,000 award, his award was disproportionate to the plaintiff's award. Because we conclude that the award of the chose in action was proper, we need not address that argument.

[17] The parties do not dispute that a chose in action is a property interest subject to distribution. See *Mickey* v. *Mickey*, 292 Conn. 597, 623, 974 A.2d

641 (2009).

[18] At trial, the following colloquy occurred:

"[The Defendant's Counsel]: Turning to page two of your financial affidavit, if you would, please? There was some testimony yesterday, on page two, the very last line item in the asset section says money due to defendant from father-in-law. Do you see that?

"[The Defendant]: Yes.

"[The Defendant's Counsel]: Now do you know what you would have to do in order to try and collect that money?

"[Defendant]: As of right now, I have to file a lawsuit against [the plaintiff's] father, which is pretty much impossible because they changed their company name already.

"[The Plaintiff's Counsel]: Move to strike, judge.

"[The Defendant]: So I cannot collect this money at all.

"[The Plaintiff's Counsel]: Move to strike.

"[The Defendant's Counsel]: You can't talk.

"[The Plaintiff's Counsel]: And I object to the question on the ground of relevance, Your Honor. This is his debt on his affidavit.

"The Court: The portion of the answer indicating that he needs to file a lawsuit against the plaintiff's father may stand. The rest may be stricken and the objection to the question is overruled."

[19] The defendant states that he has been left unable to comply with financial orders similar to the defendants in *Valentine* v. *Valentine*, 149 Conn. App. 799, 808, 90 A.3d 300 (2014), and *Greco* v. *Greco*, supra, 275 Conn. 362–63. "In *Valentine*, this court held that the trial court abused its discretion in issuing excessive financial orders that left one party with little to no income to sustain his basic welfare. . . . After determining that the defendant's net weekly income was $957.52, the [trial] court ordered him to make payments in excess of his financial capacity. It imposed a weekly obligation of $600 toward child support and alimony payments, and an additional $200 toward prior court orders until he satisfied the outstanding amount of $61,392. This $800 weekly sum alone constituted more than 80 percent of the defendant's net weekly income, and left him with a mere $157.52 to satisfy his weekly living expenses." (Citation omitted; emphasis omitted.) *Wood* v. *Wood*, 160 Conn. App. 708, 724–25, 125 A.3d 1040 (2015).

In *Greco*, our Supreme Court held that the trial court's financial orders constituted an abuse of discretion because, "[u]nder the trial court's order, the defendant was forced to the brink of abject poverty by his obligations to pay the required alimony and insurance premiums, and then stripped of any means with which to pay them by the disproportionate division of the marital assets." *Greco* v. *Greco*, supra, 275 Conn. 363.

We conclude that this case is distinguishable from *Valentine* and *Greco* because, here, the court awarded the defendant valuable assets, giving him the means both to comply with the disputed financial order and to sustain his basic welfare. See *Wood* v. *Wood*, supra, 160 Conn. App. 725. Furthermore, the defendant in this case was ordered to pay the presumptive amount in child support and no alimony payments.

———————————