******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Bright, C. J., and Prescott and Elgo, Js.

*Syllabus*

The defendant J, an heir of the decedent mortgagors, appealed to this court
following the trial court's judgment of strict foreclosure in favor of the
plaintiff bank. J claimed that the trial court improperly granted the
plaintiff's motion for a protective order that precluded her from obtaining
the discovery materials she needed to develop and pursue her special
defenses. J had filed special defenses that alleged, inter alia, that her
father, F, had threatened and fraudulently induced the decedents, who
were J's grandparents, to enter into the mortgage transaction. J filed
discovery requests that sought information from the plaintiff about its
communications with F and its knowledge of his actions. In response,
the plaintiff sought a protective order, claiming that J's requests
exceeded those normally made in mortgage foreclosure actions and that
state and federal law prohibited disclosure of the requested information.
In opposing the plaintiff's motion, J produced a letter from the executor
of her grandmother's estate consenting to the discovery requests. The
trial court granted the plaintiff's motion for the protective order as to
documents other than the promissory note, the mortgage, assignments
of the mortgage and the decedents' payment history. The court subse-
quently granted a motion the plaintiff filed to strike the special defenses
relating to F, reasoning that the special defenses failed to allege that
the plaintiff or its predecessor in interest knew of or participated in F's
alleged misconduct and that F was acting on behalf of the plaintiff or
as its agent. The court also granted motions the plaintiff filed seeking
summary judgment as to liability only on the complaint and as to J's
remaining special defenses. The court concluded, inter alia, that J could
not prevail on her special defenses that alleged that the decedents lacked
the mental capacity to enter into the loan and that there was an absence
of consideration for the loan. *Held* that the trial court's granting of the
plaintiff's motion for a protective order constituted an abuse of discre-
tion that, under the particular circumstances of this case, was harmful
to J, as it prevented her from discovering facts that would permit her
to pursue, develop and support her special defenses: contrary to the
plaintiff's assertion, state and federal law did not prohibit compliance
with J's discovery requests, as those laws permitted disclosure based
on consent, which J had obtained from the executor of her grandmother's
estate, the plaintiff provided no authority for the court's refusal to permit
any disclosure of documents beyond the note, the mortgage and assign-
ments thereof and the decedents' payment history, and the plaintiff
asserted no claim that J's discovery requests were not made in good faith
or were overbroad, unreasonable, oppressive or improper; moreover,
the plaintiff's claim that J could have amended the stricken special
defenses or obtained discovery from other sources was unavailing
because J was not a party to the mortgage transaction, the special
defenses necessarily encompassed information relevant to the plaintiff's
participation in or knowledge of F's alleged conduct, and, once the court
precluded full discovery, J could no longer develop an evidentiary basis
from which to amend the stricken special defenses; furthermore,
because J was denied the discovery needed to develop and pursue her
special defenses, she was not, as the plaintiff claimed, required to file
an affidavit pursuant to the applicable rule of practice (§ 17-47) in
response to the plaintiff's motion for summary judgment as to the spe-
cial defenses.

(*One judge concurring separately*)

Argued January 5, 2021—officially released August 9, 2022

*Procedural History*

Action to foreclose a mortgage on certain real prop-
erty, and for other relief, brought to the Superior Court

in the judicial district of Stamford-Norwalk, where the court, *Mintz, J.*, granted the plaintiff's motion to cite in James M. Francis as a defendant; thereafter, the defendant James M. Francis et al. were defaulted for failure to appear; subsequently, the court, *Randolph, J.*, granted the plaintiff's motion for a protective order; thereafter, the court, *Genuario, J.*, granted the plaintiff's motion to strike certain of the named defendant's special defenses; subsequently, the court, *Lee, J.*, granted the plaintiff's motion for summary judgment as to liability only on the named defendant's first and second special defenses; thereafter, the court, *Genuario, J.*, granted the plaintiff's motion for summary judgment as to the complaint; subsequently, the court, *Lee, J.*, granted the plaintiff's motion to substitute Cascade Funding RM1 Alternative Holdings, LLC, as the plaintiff; thereafter, the court, *Genuario, J.*, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the named defendant appealed to this court. *Reversed; further proceedings*.

*Timothy D. Miltenberger*, for the appellant (named defendant).

*Christopher J. Picard*, for the appellee (substitute plaintiff).

*Opinion*

ELGO, J. In this mortgage foreclosure action, the defendant Johanna Francis[1] appeals from the judgment of the trial court in favor of the plaintiff, CIT Bank, N.A.[2] On appeal, the defendant claims that the court improperly granted the plaintiff's motion for a protective order regarding certain discovery requests, thereby preventing her from pursuing her special defenses. We agree with the defendant and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiff commenced this action on June 13, 2016, seeking to foreclose a residential mortgage on property located at 243 New Norwalk Road in New Canaan. According to the complaint, on April 8, 2008, Norbert Francis and Evelyn Francis (decedents) executed and delivered to Financial Freedom Senior Funding Corporation, a subsidiary of IndyMac Bank, F.S.B., a promissory note for a loan not to exceed a maximum principal amount of $818,550. To secure the note, the decedents executed a reverse annuity mortgage (mortgage) on the property. Thereafter, the mortgage was assigned from Financial Freedom Senior Funding Corporation to Mortgage Electronic Registration Systems, Inc., as nominee for Financial Freedom Acquisition, LLC. The mortgage then was assigned from Mortgage Electronic Registration Systems, Inc., to the plaintiff.

Norbert Francis died on January 30, 2009, and Evelyn Francis died on February 1, 2016. The complaint alleged that the note was in default and that the plaintiff, as the holder of the note, had elected to accelerate the balance due on the note, to declare the note to be due in full and to foreclose the mortgage securing the note. The complaint further alleged that the defendant, who was the decedents' granddaughter, and James M. Francis (Francis), the defendant's father, might claim an interest in the property by virtue of being the heirs at law to the decedent Evelyn Francis.

On September 20, 2017, the defendant filed an answer to the plaintiff's complaint. On December 12, 2017, the defendant filed a revised answer, in which she raised four special defenses. In those special defenses, she alleged that (1) the note and mortgage were unenforceable because the decedents "had mental illness that prevented them from understanding the true nature of the loan documents alleged in the complaint"; (2) "neither [of the decedents] received any consideration" for the note and mortgage; (3) Francis "made a false representation of fact to induce [the decedents] to sign the note and mortgage," and "Francis knew that his representations . . . were untrue and [that the decedents] relied on the false representation to their detriment"; and (4) "Francis wrongfully acted and threatened [the

decedents] to sign the note and mortgage . . . leaving them with no reasonable alternative, and to which acts and, or, threats they acceded, resulting in a transaction that was unfair to [the decedents]."

The defendant also filed discovery requests, in which she asked, inter alia, that the plaintiff identify all communications between Francis and the plaintiff, and to produce all written communications received by the plaintiff or any of its predecessors from Francis or the decedents or any attorney purporting to represent any of them. In response, the plaintiff filed a motion for a protective order pursuant to Practice Book § 13-5, contending, inter alia, that disclosure of the requested information was precluded by state and federal law. On November 22, 2017, the defendant filed an objection to the plaintiff's motion for a protective order. At a hearing on the plaintiff's motion on January 29, 2018,[3] the plaintiff indicated that it was willing to provide "the note, the mortgage, the assignments, and the payment history" to the defendant. The plaintiff nevertheless informed the court that it objected to the defendant's requests for "any and all communications between [the] decedents, who were the ones who took out the note and the mortgage," "any communications between [the plaintiff] and [Francis]," and "any and all attorneys that were involved in the making and execution of the note and the mortgage." The plaintiff also argued that the defendant's discovery requests went "above and beyond asking for the normal documents that are required to give to the court in conjunction with a foreclosure action." The plaintiff made no claim that the defendant's discovery requests were made in bad faith or that they were overbroad, unreasonable, oppressive or improper. In response, the court stated: "What the court is taking into consideration is this: if the defenses that have been talked about include [incapacity], the court's not going to jump into the deep end of the pool and provide anything beyond the note, the mortgage, the assignments, and the payment history." The court thereafter granted the plaintiff's motion for a protective order as to documents other than the note, mortgage, assignments and payment history.

On January 26, 2018, three days before the trial court granted the plaintiff's motion for a protective order, the plaintiff filed a motion to strike pursuant to Practice Book § 10-39, claiming that the defendant's third and fourth special defenses were legally insufficient for failing to allege that the plaintiff or its predecessor in interest knew of or participated in Francis' alleged misconduct. The defendant did not file a response to the motion to strike. The court granted the plaintiff's motion to strike by order dated April 9, 2018. As to the third special defense, the court held that the defendant had failed to plead facts regarding the subject matter of the alleged misrepresentation or demonstrating that the plaintiff or Francis, acting on behalf of the plaintiff,

made the subject misrepresentation. As to the fourth special defense, the court held that the defendant had failed to allege that Francis was acting on behalf of or as the agent of the plaintiff.[4]

On September 11, 2018, the plaintiff filed a motion for summary judgment as to liability on the defendant's first and second special defenses. The defendant did not file a response to that motion and, on December 6, 2018, the court rendered summary judgment in favor of the plaintiff as to liability only. In so doing, the court concluded that the plaintiff had established that it was the holder of the note and mortgage, and that a default had occurred. The court further concluded that the defendant could not prevail on the first and second special defenses, which alleged that the decedents lacked the mental capacity to enter into the loan and that there was an absence of consideration for the loan.[5]

The plaintiff then filed a second motion for summary judgment as to liability on the sole count of the foreclosure complaint. Once again, the defendant did not file a response to the plaintiff's motion, which the court granted on January 28, 2019, stating: "The court has reviewed the affidavits on file and finds no genuine issue of material fact as to the essential allegations of the complaint. [The] court also observes that there were no counteraffidavits or no opposition filed." Thereafter, on June 11, 2019, the court rendered judgment of strict foreclosure in favor of the plaintiff. This appeal followed.

On appeal, the defendant claims that the court improperly granted the plaintiff's motion for a protective order regarding the defendant's discovery requests. According to the defendant, the plaintiff did not establish good cause for the granting of a protective order as required pursuant to Practice Book § 13-5.[6] She further contends that, in the absence of the discovery sought, she could not succeed on her third special defense, which alleged that Francis fraudulently had induced the decedents to enter into the mortgage transaction.[7] In response, the plaintiff argues that the defendant failed to preserve her claim because she did not challenge the propriety of the court's decision to strike that special defense or oppose the plaintiff's motions for summary judgment. The plaintiff further argues that, even if the trial court abused its discretion in granting the protective order, the defendant has failed to demonstrate that she was harmed by this decision. We agree with the defendant that the court improperly granted the motion for a protective order. We also conclude, under the circumstances of this case, that the defendant was harmed by the error because it prevented her from discovering facts that would permit her to pursue, develop and support her special defenses.

We begin by setting forth the applicable standard of review. "We have long recognized that the granting or

denial of a discovery request rests in the sound discretion of the [trial] court, and is subject to reversal only if such an order constitutes an abuse of that discretion." (Internal quotation marks omitted.) *Barry* v. *Quality Steel Products, Inc.*, 280 Conn. 1, 16–17, 905 A.2d 55 (2006). "[T]he [trial] court's inherent authority to issue protective orders is embodied in Practice Book § 13-5 . . . . The use of protective orders and the extent of discovery is within the discretion of the trial judge. . . . We have long recognized that the granting or denial of a discovery request . . . is subject to reversal only if such an order constitutes an abuse of that discretion." (Citation omitted; internal quotation marks omitted.) *Coss* v. *Steward*, 126 Conn. App. 30, 46, 10 A.3d 539 (2011).

As stated previously in this opinion, in her special defenses, the defendant alleged that Francis knowingly made a false representation of fact to induce the decedents to sign the note and mortgage, and that they relied on the false representation to their detriment. The defendant further alleged that Francis wrongfully acted and threatened the decedents to sign the note and mortgage. In support of the special defenses, the defendant sought, inter alia, information relating to the plaintiff's knowledge of Francis' actions. Specifically, the defendant requested that the plaintiff identify all communications between Francis and the plaintiff and to produce all written communications received by the plaintiff or any of its predecessors from Francis or the decedents, or any attorney purporting to represent any of them.

In its motion for a protective order, the plaintiff argued that disclosure of this information was prohibited by (1) General Statutes § 36a-42,[8] (2) the Fair Debt Collections Practices Act, 15 U.S.C. § 1692c (b),[9] and (3) the Gramm-Leach-Bliley Financial Modernization Act, 15 U.S.C. § 6802.[10] These provisions, however, all contain an exception that permitted the bank to comply with the defendant's discovery requests based on consent. Section 36a-42 provides in relevant part that "[a] financial institution may not disclose to any person, except to the customer or the customer's duly authorized agent, any financial records relating to such customer *unless the customer has authorized disclosure* . . . ." (Emphasis added.) Title 15 of the United States Code, § 1692c (b), provides in relevant part: "Except as provided in section 1692b of this title, *without the prior consent of the consumer* given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector." (Emphasis added.) Title 15 of the United States Code, § 6802 (a), provides: "Except as otherwise provided in this subchapter, a financial

institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title." Title 15 of the United States Code, § 6802 (e) (2), permits such disclosure, however, "with the consent or at the direction of the consumer . . . ."

In her objection to the plaintiff's motion for a protective order, the defendant argued that Attorney Jeremiah S. Miller, the executor of Evelyn Francis' estate, had consented to her discovery requests. She also attached a letter from Miller dated November 16, 2017, memorializing that consent.[11] At the hearing on the plaintiff's motion, counsel for the defendant argued that, because the defendant, who is the sole beneficiary of the estate,[12] and the executor, both had consented to the defendant's discovery request, the plaintiff's motion for a protective order was without merit. Moreover, the plaintiff has provided no authority, nor have we found any, for the court's refusal to provide anything beyond "the note, the mortgage, the assignments, and the payment history" in the context of an incapacity claim, especially here, where the defendant was not present during any stage of the transaction, including the closing. In light of the foregoing, as well as the fact that there is no claim that the defendant was pursuing discovery in bad faith, we conclude that the court abused its discretion in granting the plaintiff's motion for a protective order.[13]

Our conclusion that the trial court abused its discretion in granting the protective order, however, does not end our analysis. According to the plaintiff, even if the trial court erred in granting the motion for a protective order, the defendant abandoned her claim by failing to revise her special defenses or to appeal from the granting of the motion to strike. The plaintiff further argues that the defendant cannot show that the granting of the protective order precluded her from presenting a genuine issue of material fact in response to the plaintiff's two motions for summary judgment. Finally, the plaintiff argues that, even if the trial court abused its discretion in granting the protective order, the defendant has failed to demonstrate that she was harmed by this decision. We disagree.

Preliminary to our consideration of these issues, we recognize that "[a]n action for foreclosure is peculiarly an equitable action" and that "[a] party that invokes a court's equitable jurisdiction by filing an action for foreclosure necessarily invites the court to undertake . . . an inquiry [into his conduct]. . . . Equity will not afford its aid to one who by his conduct or neglect has put the other party in a situation in which it would be inequitable to place him. . . . A trial court conducting an equitable proceeding may therefore consider all relevant circumstances to ensure that complete justice is

done." (Citations omitted; internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Blowers*, 332 Conn. 656, 670–71, 212 A.3d 226 (2019). Relevant circumstances that may form a proper basis for defenses in a foreclosure action include "conduct occurring after the origination of the loan, after default, and *even after the initiation of the foreclosure action* . . . ." (Emphasis added.) Id., 672. We also observe that the defendant in the present case does not claim on appeal that the trial court erred in granting the motion to strike or in granting the motions for summary judgment. Instead, the defendant contends that the trial court's ruling on the protective order precluded her from obtaining the discovery materials that would permit her to determine whether she had any viable special defenses.

In order to prevail on her third special defense, the defendant was required to allege and prove "(1) that a false representation of fact was made; (2) that the party making the representation knew it to be false; (3) that the representation was made to induce action by the other party; and (4) that the other party did so act to her detriment." (Internal quotation marks omitted.) *Chase Manhattan Mortgage Corp.* v. *Machado*, 83 Conn. App. 183, 188, 850 A.2d 260 (2004). The defendant also had to establish that the plaintiff knowingly participated in or knew of the fraud. See id., 190 (spouse's fraud in inducing spouse to execute mortgage does not invalidate mortgage against mortgagee unless mortgagee participated in or knew of fraud). Similarly, in order to prevail on her fourth special defense, the defendant was required to allege and prove: "[1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim." (Internal quotation marks omitted.) Id., 189. As with fraud, in order for the defendant to prevail on this special defense, she needed to establish that the plaintiff participated in or knew of the alleged duress. See id., 190.

When the court granted the plaintiff's motion for a protective order, it effectively prevented the defendant from obtaining information regarding the plaintiff's participation in or knowledge of Francis' alleged conduct. The plaintiff argues that the defendant could have obtained discovery from other sources, such as by deposing the decedent's doctors or Francis; this argument is not persuasive, however, because her special defenses necessarily encompassed information relevant to the *plaintiff's* participation in or knowledge of Francis' alleged conduct. Moreover, we reiterate that the plaintiff has sued a defendant with respect to a transaction to which she was not a party. As such, the defendant has a right to obtain discovery from the party most likely to have it. See Practice Book § 13-2 ("[d]iscovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the

action *and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure*" (emphasis added)). Under these circumstances, once full discovery was precluded, the defendant had no evidentiary basis on which to amend her special defenses to allege that the plaintiff knew of or participated in Francis' alleged misconduct.[14] Put differently, the striking of the defendant's special defenses without the evidentiary basis to amend is simply a foregone conclusion and, thus, a red herring in our consideration of her appellate claims. Because the defendant's claim is that the court abused its discretion in granting the plaintiff the protective order and precluding discovery, and not whether it erred in granting the motion to strike, we are not persuaded that the defendant was required to take an appeal on that determination.

The plaintiff further argues that, in order to preserve this claim of error, the defendant should have filed an objection to the plaintiff's motions for summary judgment with supporting affidavits. Specifically, the plaintiff argues that the defendant should have filed an affidavit, pursuant to Practice Book § 17-47,[15] setting forth the information that is solely under the control of the plaintiff. We disagree.

"A party opposing a summary judgment motion [pursuant to Practice Book § 17-47] on the ground that more time is needed to conduct discovery bears the burden of establishing a valid reason why the motion should be denied or its resolution postponed, including some indication as to what steps that party has taken to secure facts necessary to defeat the motion. Furthermore, under § 17-47, the opposing party must show by affidavit precisely what facts are within the exclusive knowledge of the moving party and what steps he has taken to attempt to acquire these facts." (Internal quotation marks omitted.) *Bank of America, N.A.* v. *Briarwood Connecticut, LLC*, 135 Conn. App. 670, 675, 43 A.3d 215 (2012). "[A] party contending that it needs to conduct discovery to respond to a motion for summary judgment must do more than merely claim the information needed is within the possession of the opposing party." (Internal quotation marks omitted.) Id., 677.

In citing to the provisions of Practice Book § 17-47, the plaintiff contends that the defendant was required to pursue "other options available to her" such as deposing the decedents' physicians or Francis, and, notably, emphasizes that the defendant failed to dispute the affidavit of Christopher J. Albanese, the closing attorney for both the bank and the decedents, which was filed with the plaintiff's first motion for summary judgment. See footnote 5 of this opinion. By its terms, however, the relief available in § 17-47 assumes that discovery has not yet been attempted or is complete; it does not contemplate the present situation in which the defen-

dant was precluded from full and complete discovery in the first instance. For that reason, the present case is unlike *Briarwood Connecticut, LLC*, in which the defendant already had successfully conducted extensive discovery and, as the court observed, the plaintiff had not hindered the defendant in its discovery efforts. See *Bank of America, N.A.* v. *Briarwood Connecticut, LLC*, supra, 135 Conn. App. 677. In the present case, by contrast, the record indicates that the precluded discovery included communications between any attorney purporting to represent the plaintiff or its predecessors, the decedents and Francis. The protective order thus deprived the defendant of the ability to explore and potentially challenge the circumstances of the closing, as attested to by Albanese. Under the particular circumstances of this case, the defendant was not required to file an affidavit pursuant to § 17-47 in response to the plaintiff's motion for summary judgment as to her special defenses because the record already makes clear that the defendant sought, but was denied, the discovery needed to develop and pursue her special defenses.

Finally, we address whether the defendant has shown that she was harmed by the granting of the protective order. See *Coss* v. *Steward*, supra, 126 Conn. App. 47. "The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *Kalams* v. *Giacchetto*, 268 Conn. 244, 249, 842 A.2d 1100 (2004). In considering the question of harm, we reiterate that the defendant's issue on appeal is not whether the court erred in rendering judgment based on the record before it. Instead, the defendant's claim of error is that the court's protective order prevented her from having the opportunity to pursue, develop and support the defenses she raised. Under the particular circumstances of this case, we conclude that the defendant has satisfied her burden of establishing that she was harmed by the granting of the protective order.

We initially note that our rules broadly allow for the discovery of information that is "reasonably calculated to lead to the discovery of admissible evidence." Practice Book § 13-2.[16] "[T]he purpose of the rules of discovery is to make a trial less a game of blindman's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." (Internal quotation marks omitted.) *Krahel* v. *Czoch*, 186 Conn. App. 22, 36, 198 A.3d 103, cert. denied, 330 Conn. 958, 198 A.3d 584 (2018); see also *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 58–59, 459 A.2d 503 (1983) (court's discretion in granting or denying discovery request limited by provisions of discovery rules, especially mandatory provision that discovery "*shall* be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action" (emphasis in original; internal quotation marks omitted)). Furthermore, the

boundaries of discovery are clearly broader than the boundaries of admissible evidence. See *Sanderson* v. *Steve Snyder Enterprises, Inc.*, 196 Conn. 134, 139, 491 A.2d 389 (1985).

Our rules of practice further provide the procedures governing the discovery process. As applied to the present case, Practice Book § 13-6 (a) provides in relevant part that "[w]ritten interrogatories may be served upon any party without leave of the judicial authority at any time after the return day. . . ." Similarly, Practice Book § 13-9 (d) provides in relevant part that "[r]equests for production may be served upon any party without leave of court at any time after the return day. . . ." By allowing discovery immediately after the return date, these rules implicitly acknowledge that a defendant might not know what special defenses are available in the absence of the discovery, and provide the defendant an opportunity to obtain any and all information that might be of assistance in the development and pursuit of special defenses. Cf. *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 672 (relevant circumstances that may form proper basis for defenses in foreclosure action include "conduct occurring . . . e*ven after the initiation of the foreclosure action* . . . ." (emphasis added)). In accordance with these rules, on September 21, 2017, the defendant served interrogatories and requests for production on the plaintiff, seeking information relating to the plaintiff's knowledge of Francis' actions. Specifically, the defendant requested that the plaintiff identify all communications between Francis and the plaintiff and produce all written communications received by the plaintiff or any of its predecessors from Francis or the decedents or any attorney purporting to represent any of them.

It is important to note that the plaintiff does not argue on appeal that the information sought by the defendant in her discovery request was not "reasonably calculated to lead to the discovery of admissible evidence." Practice Book § 13-2. Furthermore, during oral argument before this court, counsel for the plaintiff conceded that the grounds stated in the motion for a protective order related only to the confidentiality of the requested information pursuant to federal and state law; the motion did not assert that the requested information was not likely to lead to the discovery of relevant and admissible evidence. Indeed, there can be no dispute that the discovery requests were reasonably seeking evidence in support of recognized and valid equitable defenses to the plaintiff's mortgage foreclosure action.

Similarly, the plaintiff does not argue on appeal that the special defenses alleged by the defendant were not pleaded in good faith. In fact, a review of the record amply supports the defendant's good faith belief in her special defenses. Specifically, after the granting of the protective order, the defendant responded to the plain-

tiff's first set of interrogatories and requests for production. Her response explained how the decedents had no need for the additional money generated by the mortgage and set forth how the decedents managed their finances over the course of their lives with the intent of avoiding the type of mortgage transaction at issue.[17] The defendant's response also stated that Francis had been charged with first and second degree larceny for stealing an amount in excess of $500,000 from Evelyn Francis' home equity account and that both the defendant and an investigator had been unsuccessful in their attempts to contact the plaintiff to obtain information regarding the subject transaction.[18] At the hearing on the motion for the protective order, counsel for the defendant advised the court that the state was prosecuting Francis for larceny. The plaintiff does not contend that any of these statements were not made in good faith.

When the trial court in the present case granted the plaintiff's motion for a protective order, it effectively prevented the defendant from pursuing, developing and supporting her special defenses. To be clear, in order for the defendant to pursue her special defenses of fraud and duress, she needed to establish that the plaintiff participated in or knew of the alleged fraud or duress. See, e.g., *Chase Manhattan Mortgage Corp.* v. *Machado*, supra, 83 Conn. App. 188–90. Although it is true that the defendant did not allege facts in her special defenses regarding the plaintiff's involvement in Francis' conduct, the record amply supports the defendant's good faith basis for requesting the discovery that would have enabled her to amend her special defenses to include those allegations. Moreover, we reiterate that the court's order granting the plaintiff's motion specifically precluded the defendant from obtaining the requested discovery of all communications between Francis and the plaintiff, and all written communications received by the plaintiff or any of its predecessors from Francis or the decedents or any attorney purporting to represent any of them. Under the limited circumstances of this case, and given the broad scope of our discovery rules, as well as the equitable nature of a foreclosure proceeding; see, e.g., *U.S. Bank National Assn.* v. *Blowers*, supra, 332 Conn. 670–71; we conclude that the defendant has satisfied her burden of establishing that she was harmed by the granting of the protective order.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.[19]

In this opinion the other judges concurred.

[1] The Department of Revenue Services and the Judicial Branch also were named as defendants. The trial court thereafter granted the motion filed by the plaintiff, CIT Bank, N.A., to cite in James M. Francis as a defendant. On September 26, 2017, those three defendants were defaulted for failure to appear. We refer in this opinion to Johanna Francis as the defendant.

[2] We note that, after the court ruled on the motions at issue in this appeal, CIT Bank, N.A., assigned the mortgage at issue to Cascade Funding RM1 Alternative Holdings, LLC. The court thereafter granted the plaintiff's motion

to substitute Cascade Funding RM1 Alternative Holdings, LLC, as the plaintiff. For clarity, we refer in this opinion to CIT Bank, N.A., as the plaintiff.

[3] On November 27, 2017, the court summarily granted the plaintiff's motion for a protective order. On December 13, 2017, the defendant filed a motion to reargue. By order dated December 20, 2017, the court vacated its ruling on the plaintiff's motion for a protective order and conducted a hearing on January 29, 2018.

[4] In its order granting the motion to strike, the court stated: "In the third special defense, the [defendant alleges] that a third party made misrepresentations to the [decedents], but there is no allegation concerning the subject of the misrepresentation. There is no allegation that the plaintiff made the misrepresentation or that the third party who allegedly made the misrepresentation was in any way acting on behalf of or as the agent of the plaintiff or the plaintiff's predecessors in interest. These are essential elements of the special defense. Similarly, the fourth special defense alleges that the [decedents] were acting under the undue influence of the third party. But, again, the defense is lacking in any allegation that even infers that the third party was acting on behalf of or as the agent of the plaintiff or [its] predecessors, or even that they knew or had reason to know of the influence. The court also observes that the [defendant has] not filed a memorandum in opposition to the plaintiff's motion to strike, though [she] sought and received additional time to do so."

[5] In its decision, the court stated that the defendant's first special defense "rests solely on speculation. [The defendant] acknowledges [that] she has no personal knowledge of the closing or, by extension, of [the decedents'] condition at the closing. On the other hand, the plaintiff submits the affidavit of Attorney Christopher J. Albanese, who handled the closing for the [decedents] and the bank. His affidavit attests that, although elderly, the [decedents] were lucid and pleased to be able to withdraw additional funds by refinancing the loan on their home. As a result, the first special defense is not supported by evidence and is insufficient to defeat the motion for summary judgment.

"[The] defendant's second special defense fares no better. [The] defendant claims that the loan is invalid because of lack of consideration and suggests that the money was stolen by [Francis]. . . . The evidence set forth in [Albanese's] affidavit is that the loan was funded, a prior mortgage was paid off, and the [decedents] received cash and retained a balance in the new home equity account. In [her response to the plaintiff's interrogatories], the defendant says that [Francis] has been charged with first and second degree larceny for stealing money from [the] home equity account [belonging to his mother, the decedent Evelyn Francis]. [The defendant] states that he used a power of attorney that had been executed by [the decedent Evelyn Francis]. As a result, any money taken by [Francis] would have come from [the decedent Evelyn Francis'] accounts after the loan had been funded by the lender. Accordingly, there was no lack of consideration demonstrated by the defendant. [The] defendant's complaint is with her father, not the bank." (Citation omitted.)

[6] Practice Book § 13-5 provides in relevant part: "Upon motion by a party from whom discovery is sought, and for good cause shown, the judicial authority may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . (2) that the discovery may be had only on specified terms and conditions. . . ."

[7] At oral argument before this court, counsel for the defendant clarified that the "key special defenses" were the third and fourth special defenses alleging fraud and duress.

[8] General Statutes § 36a-42 provides: "A financial institution may not disclose to any person, except to the customer or the customer's duly authorized agent, any financial records relating to such customer unless the customer has authorized disclosure to such person or the financial records are disclosed in response to (1) a certificate signed by the Commissioner of Administrative Services or the Commissioner of Social Services pursuant to the provisions of section 17b-137, (2) a lawful subpoena, summons, warrant or court order as provided in section 36a-43, (3) interrogatories by a judgment creditor or a demand by a levying officer as provided in sections 52-351b and 52-356a, (4) a certificate issued by a medical provider or its attorney under subsection (b) of section 17b-124, provided nothing in this subsection shall require the provider or its attorney to furnish to the financial institution any application for medical assistance filed pursuant to an agreement with the IV-D agency under subsection (c) of section 17b-137, (5) a certificate signed by the Commissioner of Veterans Affairs pursuant to section 27-117,

(6) the consent of an elderly person or the representative of such elderly person provided to a person, department, agency or commission pursuant to section 17b-454, provided the financial institution shall have no obligation to determine the capacity of such elderly person or the representative of such elderly person to provide such consent, (7) a request for information served upon a financial institution in accordance with subsection (e) of section 12-162, or (8) a request for information made by the Commissioner of Revenue Services pursuant to section 12-39cc."

[9] Section 1692c (b) of title 15 of the United States Code provides: "Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."

[10] Section 6802 (a) of title 15 of the United States Code provides: "Except as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title."

[11] The letter, addressed to counsel for the plaintiff and counsel for the defendant, stated: "This is to inform you that I, as the executor of the Estate of Evelyn S. Francis, give permission to [the plaintiff] to comply with the [d]efendant's [f]irst [s]et of [i]nterrogatories and [r]equests for [p]roduction dated September 21, 2017, filed by [the defendant]."

[12] Evelyn Francis intentionally made no provision for Francis in her last will and testament.

[13] Although the plaintiff argues on appeal that the consent of the estate of Norbert Francis was also required in order to comply with the defendant's discovery request, the plaintiff did not make this argument before the trial court. During the hearing, after counsel for the defendant pointed out that Miller had consented to the discovery, the court asked counsel for the plaintiff, "[w]hat's wrong with that?" In response, counsel for the plaintiff stated that the reason he filed the motion for a protective order was because the defendant's discovery request went beyond requesting the note, mortgage, assignments and payment history. Because the plaintiff did not argue before the trial court that it needed the consent of the estate of Norbert Francis in order to comply with the discovery request, we decline to address this issue on appeal. See *Guzman* v. *Yeroz*, 167 Conn. App. 420, 426, 143 A.3d 661 ("Our appellate courts, as a general practice, will not review claims made for the first time on appeal. . . . [A]n appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . [B]ecause our review is limited to matters in the record, we [also] will not address issues not decided by the trial court." (Internal quotation marks omitted.)), cert. denied, 323 Conn. 923, 150 A.3d 1152 (2016).

[14] In *Chase Manhattan Mortgage Corp.* v. *Machado*, supra, 83 Conn. App. 188–90, this court held that the defendant in a foreclosure action could not prevail on her special defenses of fraud and duress because there was no allegation that the plaintiff or its predecessor had knowingly participated in the alleged fraud or duress. The facts of this case are distinguishable from those of *Machado* because in this case, unlike *Machado*, the defendant sought, by way of discovery, information regarding the plaintiff's participation in or knowledge of Francis' alleged conduct. The court, however, granted the plaintiff's motion for a protective order, thus precluding the defendant from obtaining this discovery.

[15] Practice Book § 17-47 provides: "Should it appear from the affidavits of a party opposing the motion that such party cannot, for reasons stated, present facts essential to justify opposition, the judicial authority may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

[16] Practice Book § 13-2 provides in relevant part that "[d]iscovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action and if it can be provided by the disclosing party or person with substantially greater facility than it could otherwise be obtained by the party seeking disclosure. It shall not be ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery

of admissible evidence. . . .”

[17] The defendant's response stated in part: “[The decedents] were both elderly retirees at the time the loan documents at issue were executed. They were also wealthy individuals. I do real estate development and million dollar loan transactions, and I was not told that they were applying for anything. They had no need for additional money, either in a lump sum or as a stream of payments to supplement their income. During their entire adult lives, both [decedents] were frugal individuals that did not incur unnecessary expenses or incur unnecessary debts. They lived in such a manner as to protect them from needing any type of financial assistance whatsoever in their elderly years and to insure that the family would not be burdened with financial expenses upon their death[s]. As a result, over the course of their lifetimes, both [decedents] accumulated significant assets for the purpose— and with the intent—of avoiding the need to engage in the type of mortgage transaction [at] issue in this civil action. With my going so far as to even pay for funeral expenses upon my grandfather's death and make prearrange- ments for my grandmother's plot.

“In sum, [the decedents] would not have entered into the mortgage transac- tion at issue had they understood their true nature. I became fully aware of [the decedents'] mental incapacity when I learned that they had been duped into signing the loan documents.”

[18] The defendant's response stated in part: “The state of Connecticut's Department of Social Services concluded that [Francis] may have stolen an amount in excess of $500,000 from [the decedent Evelyn Francis] and the amount stolen ‘may have been from a home equity.’ The Department of Social Services urged the chief state's attorney ‘to commence a criminal investigation into this especially egregious case.’ [Francis] has been charged with larceny in the [first] and [second] degree. His criminal trial is currently scheduled for November, 2019. I am aware that the Ct investigator tried to contact [the plaintiff] on various occasions, and I personally tried to contact them on various occasions prior to her death and upon her death and no information [was] forthcoming nor was I added as per POA which was provided to them on more than one occasion prior to her death and after her death. I also did not receive information as was requested by the estate executor to communicate with me right after her death.”

[19] We note that the plaintiff contends, in an alternative argument, that the defendant does not have standing to raise any claims concerning this loan as she was not a party to this transaction. In support of this alternative argument, the plaintiff cites *Wells Fargo Bank*, *N.A.* v. *Strong*, 149 Conn. App. 384, 401, 89 A.3d 392, cert. denied, 312 Conn. 923, 94 A.3d 1202 (2014), and *Deutsche Bank National Trust Co.* v. *Cornelius*, 170 Conn. App. 104, 118, 154 A.3d 79, cert. denied, 325 Conn. 922, 159 A.3d 1171 (2017). These cases are readily distinguishable from the present case. In *Strong*, this court held, inter alia, that the defendant in a foreclosure action, who had raised a defense based on the plaintiff's alleged noncompliance with a pooling and servicing agreement, had failed to meet her burden of establishing that summary judgment as to liability should not have been rendered for the plaintiff. We stated in *Strong* that “[i]t is well settled that one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract.” (Internal quotation marks omitted.) *Wells Fargo Bank*, *N.A.* v. *Strong*, supra, 401. In *Cornelius*, this court held that the plaintiff's purported failure to comply with the mortgage's notice provision did not implicate the jurisdiction of the trial court or deprive this court of jurisdiction over the foreclosure action. See *Deutsche Bank National Trust Co.* v. *Cornelius*, supra, 116. In so holding, we noted that the defendant was not a party to the mortgage. See id., 116 n.10.

In the present case, the defendant was named as a party in this action by virtue of her being an heir of the decedents. “[I]f a mortgagee brings a foreclosure action against a decedent's property during the settlement of the decedent's estate, the mortgagee must name the heirs or devisees as defendants because they hold title to the equitable right of redemption . . . .” *Connelly* v. *Federal National Mortgage Assn.*, 251 F. Supp. 2d 1071, 1075 (D. Conn. 2003). As a defendant and proper party in this foreclosure action, the defendant had the right to seek discovery relevant to her special defenses of fraud and duress.